**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GAYANN MILLER,

     Plaintiff,

vs.

SUBURBAN MOBILITY
AUTHORITY, for REGIONAL
TRANSPORTATION,

     Defendant.

Case No. _____
Hon. _____

**PLAINTIFF'S COMPLAINT**
**& JURY DEMAND**

James B. Rasor (P43476)
Andrew J. Laurila (P78880)
**Rasor Law Firm PLLC**
Attorneys for Plaintiff
201 E 4th Street
Royal Oak, MI 48067
(248) 543-9000/(248) 543-9050 (fax)
jbr@rasorlawfirm.com
ajl@rasorlawfirm.com

**COMPLAINT AND JURY DEMAND**

    **NOW COMES** Plaintiff, GAYANN MILLER, by and through her attorneys, RASOR LAW FIRM, PLLC, and for her Complaint against the above-named Defendant, states as follows:

**PARTIES**

1

1.     At all times relevant to this lawsuit, Plaintiff GAYANN MILLER (herein "Plaintiff") was a resident of Holly, County of Oakland, State of Michigan.

2.     Plaintiff is an Caucasian female.

3.     Defendant SUBURBAN MOBILITY AUTHORITY for REGIONAL TRANSPORTATION (hereinafter "SMART") is a municipal corporation carrying out municipal functions within the Counties of Wayne, Oakland and Macomb in the State of Michigan.

4.     Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(a) and the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2201(a).

5.     Defendant SMART operates bus routes across Southeast Michigan.

6.     At all times material and relevant hereto, Defendant SMART was Plaintiff's employer and Plaintiff was employed with Defendant.

7.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (herein "EEOC") alleging SMART discriminated and retaliated against her.

8.     The EEOC investigated Plaintiff's allegations of discrimination and Plaintiff received a Dismissal and Notice of Rights letter on February 7, 2020.

9.     All conditions precedent to the filing of this Complaint have been performed or have occurred.

2

## JURISDICTION AND VENUE

10.     This cause of action arose in both the Oakland and Wayne County, State of Michigan.

11.     This Honorable Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f), § 2000e-6, and 28 U.S.C. §§ 1331, 1343(a), and 1345.

12.     Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3), § 2000e-6(b), and 28 U.S.C. § 1391(b) because it is where events or omissions giving rise to the cause of action occurred.

## COMMON FACTUAL ALLEGATIONS

13.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 12, as if fully set forth herein.

14.     Plaintiff is a Caucasian female, and as such, a member of a protected class.

15.     Plaintiff began her employment with Defendant as a bus driver in 2015.

16.     Throughout Plaintiff's employment with Defendant she worked out of Defendant's Oakland County sector.

17.     In June of 2019, Plaintiff applied for the position of Road Supervisor, which SMART had a few openings at that time.

3

18.     Given Plaintiff's long, successful tenure as a driver, she was more than qualified for the supervisor position, which was a step above her then-position.

19.     Defendant's Superintendent is Carol Martin, an African American, and she is the ultimate decision-maker for the supervisor promotions.

20.     In July, Plaintiff was informed that she did not get the supervisor position.

21.     The supervisor positions that were available at that time were all given to African American candidates.

22.     The two individuals who received the specific supervisor position Plaintiff sought were far less qualified, had less experience than Plaintiff, and did not have as good of a track record as drivers as Plaintiff.

23.     Because the July supervisor promotion denial was patently discriminatory, Plaintiff filed a grievance with Defendant pertaining to what she felt was race-based discrimination.

24.     Subsequently to filing her grievance, Plaintiff was investigated for a baseless discipline and was threatened to be suspended for ten days and was ultimately given a working suspension for five days.

25.     Along with this baseless suspension, Plaintiff also experienced more hostility from her supervisor(s), which made her work environment and ability to perform her duties more difficult.

4

26.    Of the approximately fifteen to twenty supervisors that Defendant SMART currently employs, almost all of them are African American, all of whom were hired under the regime of Carol Martin.

## COUNT I – DISPARATE TREATMENT – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2 AS TO DEFENDANT SMART

27.    Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 26, as if fully set forth herein.

28.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. prohibits discrimination against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race.

29.    At all material times, Plaintiff was an employee of Defendant SMART, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

30.    Plaintiff is Caucasian, in the minority at SMART, specifically in the minority for Road Supervisors, and she is a member of a protected class under Title VII of the Civil Rights Act of 1964.

31.    As an employer within the meaning of the Title VII of the Civil Rights Act of 1964, Defendant SMART owed Plaintiff a duty not to discriminate against her with respect to employment, promotional opportunities,

5

compensation or other conditions or privileges of employment on the basis of Plaintiff's race.

32.     Because of her race, Plaintiff was subjected to treatment from Defendant SMART that was disparate from that accorded to non-Caucasian co-workers and applicants of Defendant SMART who were treated more favorably than Plaintiff.

33.     The disparate and less favorable treatment to which Plaintiff was subjected from Defendant SMART has included adverse employment actions on the basis of Plaintiff's race, and Plaintiff has otherwise been discriminated against with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of her race.

34.     Specifically, Plaintiff, a long-time, experienced SMART employee, was denied a promotion when various less qualified, African Americans were promoted.

35.     The disparate and less favorable treatment to which Plaintiff was subjected from Defendant SMART came both from management and supervisory personnel, specifically but not limited to Carol Martin, who is African American.

36.     Defendant SMART has a policy or pattern of practice that encourages management/supervisory personnel and/or the interview panel to

6

directly discriminate against Caucasian applicants, or that tolerates the disparate and less favorable treatment of Caucasian applicants by the same.

37. Defendant SMART has a policy or pattern of practice that encourages management or supervisory personnel to look the other-way or actively encourage disparate and less favorable treatment of Caucasian applicants by African American employees, including but not limited to the interview panel for available road supervisor positions.

38. Defendant SMART has either directly discriminated against Plaintiff or has tolerated and looked the other-way to disparate and less favorable treatment of Plaintiff by African American decision-makers.

39. The disparate treatment to which Plaintiff was subjected while working at Defendant SMART and involved in the Road Supervisor application process has been so substantially disparate and less favorable than the treatment of non-Caucasian employees that it raises an inference of disparate treatment discrimination.

40. The disparate treatment which Plaintiff was subjected to from Defendant SMART and continues to suffer in applying for the vacant Road Supervisor positions is so substantially disparate and less favorable than the treatment received by her non-Caucasian peers that it unreasonably interfered with Plaintiff's work performance.

7

41.   There is no legitimate business reason justifying the disparate treatment to which Plaintiff was subjected during her career at Defendant SMART and while applying for various vacant Road Supervisor positions.

42.   In violation of Title VII, 42 U.S.C. § 2000e-2(a), SMART has discriminated on the basis of race by denying Plaintiff promotions to vacant road supervisor positions she was qualified for and instead hiring less qualified and less experienced African American employees for these promotions.

43.   The acts and practices of Defendant described in the above paragraphs constitute a pattern or practice of discrimination on the basis of race in violation of Title VII because Defendant has pursued, and continues to pursue, policies and practices with respect to terms, conditions, or privileges of employment that discriminate against Caucasian employees and that deprive or tend to deprive Caucasian applicants of vacant Road Supervisor assignments of employment opportunities because of their race.

44.   As a direct and proximate result of SMART's unlawful actions against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

45.   Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant is liable to Plaintiff for all damages allowed under

8

federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to satisfy any and all such inadequacies. The conduct of Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant in an amount that is fair and reasonable and compensates Plaintiff for her injuries, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred.

**COUNT II – RACIAL DISCRIMINATION**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT,**
**M.C.L. § 37.2101 *et seq.*, AS TO DEFENDANT SMART**

46.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 45, as if fully set forth herein.

47.     The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* prohibits discrimination against any individual with respect to employment, compensation, or a term, condition, or privilege of employment because of race.

48.     At all material times, Plaintiff is and has been an employee of Defendant SMART, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

49.     Plaintiff is Caucasian, in the minority at SMART, specifically the Oakland County branch at which she is assigned, and is a member of a protected class under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

50.     As an employer within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*., Defendant SMART owed Plaintiff a duty not to discriminate against her with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of her race.

51.     Because of her race, Plaintiff has been and continues to be subjected to treatment during her career with Defendant SMART that has been disparate from that accorded to non-Caucasian co-workers of Defendant SMART, who have been treated more favorably than she.

52.     The disparate and less favorable treatment to which Plaintiff has been subjected during the time that she has been employed by Defendant has included adverse employment actions on the basis of Plaintiff's race or Plaintiff has otherwise been discriminated against with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of her race.

10

53. The disparate and less favorable treatment to which Plaintiff has been subjected during the time that she has been employed by Defendant SMART has come both from management and supervisory personnel.

54. Defendant SMART has a policy or pattern of practice that encourages management or supervisory personnel to directly discriminate against Caucasian employees, or that tolerates the disparate and less favorable treatment of Caucasian employees by said management and supervisory personnel.

55. Management personnel have either directly discriminated against Plaintiff or have tolerated and looked the other-way to disparate and less favorable treatment of Plaintiff by her non-Caucasian co-workers and/or supervisory personnel.

56. The disparate treatment to which Plaintiff has been subjected during her career at Defendant SMART has been so substantially disparate and less favorable than the treatment of non-Caucasian employees that it raises an inference of disparate treatment discrimination.

57. The disparate treatment to which Plaintiff has been subjected during her career at Defendant SMART has been so substantially disparate and less favorable than the treatment received by her non-Caucasian co-workers that it unreasonably interfered with Plaintiff's work performance.

11

58. There is no legitimate business reason justifying the disparate treatment to which Plaintiff has been subjected during her career at Defendant SMART.

59. As a direct and proximate result of Defendant SMART's unlawful actions against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

60. Pursuant to the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*., Defendant is liable to Plaintiff for all damages allowed under state law.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $25,000.00, plus costs, interest, and attorney fees so wrongfully incurred, as the Court deems just.

**COUNT III – DISPARATE IMPACT –
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2
– & the ELLIOTT LARSEN CIVIL RIGHT ACT
AS TO DEFENDANT SMART**

61. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 60, as if fully set forth herein.

62.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, prohibits discrimination against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race.

63.     Plaintiff is Caucasian, in the minority, specifically but not limited to the Road Supervisor position and is a member of a protected class under both Title VII and ELCRA.

64.     As an employer within the meaning of the Title VII and ELCRA, Defendant SMART owed Plaintiff a duty not to discriminate against her with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of Plaintiff's race.

65.     A Disparate Impact claim requires a Plaintiff to show that a Defendant's policy or practice has a disproportionate adverse effect on members of a protected class. 42 U.S.C. § 2000e-2(k).

66.     While Michigan statutes do not specifically delineate disparate impact, Michigan courts have interpreted ELCRA to permit a plaintiff to pursue a disparate impact theory akin to the federal standard. See *Smith v. Consolidated Rail Corp.*, 168 Mich App 773 (1988).

67.     The policy at issue here is Defendant SMART's application and selection process for vacant Road Supervisor positions, including the use of

13

almost all African American interview panels and a racially-biased, African American Superintendent.

68. Another policy at issue here is that Defendant SMART interviews applicants once but allows them to subsequently apply for different supervisor positions when those openings become available.

69. While facially neutral, Defendant's hiring/promotion process for vacant Road Supervisor assignments considers race as a factor and benefits African American candidates, despite qualifications and/or experience.

70. Defendant's interview process and hiring policies/process has a disproportionate effect on Caucasian applicants, as evidenced by the lack of Caucasian employees hired for Road Supervisor assignments, which rises to a level of disparate impact under Title VII.

71. Defendant's Road Supervisor interview/hiring process is not consistent with business necessity and could be accomplished with a more effective, less discriminatory and/or discretionary system with less internal involvement and more third-party involvement.

72. Because of Defendant's hiring/interview policies and procedures, Caucasian candidates are substantially not promoted more than African American candidates for vacant Road Supervisor positions.

73. Because of Defendant's interview/hiring policies and procedures, SMART's predominantly African American leadership maintains control and discretion over reviewing and deciding any Road Supervisor selections.

74. Defendant SMART's policies and procedures for the interview/hiring process lack transparency, sufficient standards and controls, opportunities for internal redress and oversight.

75. Defendant SMART's interview/hiring policies have been implemented in a manner which has had an adverse disparate impact on qualified Caucasian candidates like Plaintiff evidenced by the stark disparity in the race of Road Supervisors.

76. Defendant SMART has demonstrated a reckless disregard and deliberate indifference to its Caucasian Road Supervisor candidates by failing to correct evidence of racial discrimination in the above-referenced policies and procedures.

77. As a direct and proximate result of SMART's unlawful actions against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, failing to receive a promotion to Road Supervisor she was qualified for and all benefits that come with said failure.

78. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the ELCRA, Defendant is liable to Plaintiff for all damages

allowed under federal and state law law, including but not limited to the following:

    a.    Declaratory relief recognizing that Defendant has unlawfully discriminated against Plaintiff in the Road Supervisor interview/hiring process;

    b.    Injunctive relief prohibiting these discriminatory practices from continuing;

    c.    Individual equitable relief, including both back and front pay and/or placing Plaintiff in a Road Supervisor assignment;

    d.    An award of costs, interest, and attorney fees.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant in an amount that is fair and reasonable and compensates Plaintiff for her injuries including but not limited to the above-referenced damages.

### COUNT IV – RETALIATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2 AS TO DEFENDANT SMART

79.    Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 78, as if fully set forth herein.

80.    Title VII prohibits retaliation against any individual because that person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in any investigation … under this act. 42 U.S.C. § 2000e-3(a).

16

81. At all material times, Plaintiff has been an employee of Defendant employer SMART, covered by and within the meaning of Title VII.

82. Complaining about, reporting, and/or opposing racially discriminatory policies or patterns of practice, and/or filing an EEOC Charge of discrimination is a statutorily protected activity.

83. As an employer within the meaning of the Title VII of the Civil Rights Act of 1964, Defendant SMART owed Plaintiff a duty not to retaliate against her with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment because he engaged in protected activity.

84. Plaintiff engaged in conduct protected under Title VII of the Civil Rights Act of 1964, including, but not limited to, complaining of, reporting, and/or opposing the discriminatory conduct of the agents, servants, and/or employees of Defendant SMART and by filing an EEOC Charge of Discrimination.

85. Defendant SMART had knowledge of Plaintiff's protected activities as set forth in the preceding paragraphs.

86. Defendant SMART, by and through its agents, servants, and/or employees, subsequently took adverse, retaliatory action against Plaintiff including, but not limited to, bringing disciplinary actions, denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees

17

who had not engaged in protected activity, and selectively enforcing polices/procedures solely against Plaintiff.

87.     Plaintiff was subjected to harassment and other retaliatory acts by Defendant SMART and its agents, servants and/or employees in retaliation for her opposition to civil rights violations and having complained about the discriminatory acts described herein, in violation of Title VII of the Civil Rights Act of 1964.

88.     Defendant SMART and its agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

89.     As a direct and proximate result of Defendants SMART's unlawful actions and retaliations against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

90.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to

18

satisfy any and all such inadequacies. The conduct of Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant in an amount that is fair and reasonable and compensates Plaintiff for her injuries, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred.

## COUNT V – RETALIATION
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et seq.*, AS TO DEFENDANT SMART

91. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 90, as if fully set forth herein.

92. The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* prohibits retaliation against any individual because that person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in any investigation … under this act.

93. At all material times, Plaintiff is and has been an employee of Defendant SMART, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

94. As an employer within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, Defendant SMART owed Plaintiff a duty not to retaliate against her with respect to employment, promotional

19

opportunities, compensation or other conditions or privileges of employment on the basis of her race.

95. Complaining about, reporting, and/or opposing racially discriminatory policies or patterns of practice is a statutorily protected activity under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

96. Plaintiff repeatedly engaged in conduct protected under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*., including, but not limited to, complaining of, reporting, and/or opposing the discriminatory conduct of the agents, servants, and/or employees of Defendant SMART and filing an EEOC charge of discrimination.

97. Defendant SMART had knowledge of Plaintiff's protected activities as set forth in the preceding paragraph.

98. Defendant SMART by and through its agents, servants, and/or employees, subsequently took adverse, retaliatory action against Plaintiff including, but not limited to, bringing disciplinary actions, denying Plaintiff conditions, terms, opportunities, and privileges provided to non-Caucasian employees of Defendant SMART, and/or suspending Plaintiff without cause.

99. Plaintiff was subjected to harassment and other retaliatory acts by Defendant SMART and its agents, servants and/or employees in retaliation for her opposition to civil rights violations and having complained about the

20

discriminatory acts described herein, in violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

100.   Plaintiff experienced various adverse employment actions following her protected activity including but not limited to suspension and a hostile treatment.

101.   Defendant SMART and its agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

102.   As a direct and proximate result of Defendant SMART's unlawful actions and retaliations against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

103.   Pursuant to the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*., Defendant is liable to Plaintiff for all damages allowed under state law.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant in an amount in excess of $25,000.00, plus costs, interest, and attorney fees so wrongfully incurred, as the Court deems just.

RESPECTFULLY SUBMITTED:

**RASOR LAW FIRM**

/s/ *Andrew J. Laurila*
James B. Rasor (P43476)
Andrew J. Laurila (P78880)
Attorneys for Plaintiffs
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
(248) 544-9300/(248) 543-9050 Fax
jbr@rasorlawfirm.com
ajl@rasorlawfirm.com

Dated: May 5, 2020

RASOR LAW FIRM, PLLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GAYANN MILLER,

     Plaintiff,

vs.

SUBURBAN MOBILITY
AUTHORITY, for REGIONAL
TRANSPORTATION,

     Defendant.

Case No. _____
Hon. _____

**PLAINTIFF'S COMPLAINT**
**& JURY DEMAND**

---

James B. Rasor (P43476)
Andrew J. Laurila (P78880)
**Rasor Law Firm PLLC**
Attorneys for Plaintiff
201 E 4th Street
Royal Oak, MI 48067
(248) 543-9000/(248) 543-9050 (fax)
jbr@rasorlawfirm.com
ajl@rasorlawfirm.com

---

**JURY DEMAND**

    **NOW COMES** Plaintiff, GAYANN MILLER, by and through her attorneys, RASOR LAW FIRM, PLLC, and hereby demands a trial by jury in the above-captioned cause of action.

23

RESPECTFULLY SUBMITTED:

**THE RASOR LAW FIRM**

/s/ *Andrew J. Laurila*
James B. Rasor (P43476)
Andrew J. Laurila (P78880)
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
(248) 544-9300/(248) 543-9050 Fax
jbr@rasorlawfirm.com
ajl@rasorlawfirm.com

Dated: May 5, 2020

24