UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAYANN MILLER,

Plaintiff,

v.

SUBURBAN MOBILITY
AUTHORITY FOR REGIONAL
TRANSPORTATION,

Defendant.

_____/

Case No. 20-cv-11122

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE [ECF NO. 46]; (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION IN LIMINE [ECF NO. 47]; (3) DENYING PLAINTIFF'S MOTION IN LIMINE [ECF NO. 61]; AND (4) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION [ECF NO. 60]**

## I. INTRODUCTION

On May 5, 2020, Plaintiff Gayann Miller ("Plaintiff" or "Miller") commenced this employment discrimination action against Defendant Suburban Mobility Authority for Regional Transportation ("SMART"). ECF No. 1, PageID.1. Miller alleges that SMART discriminated against her based on her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"), and the Elliot-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.* ("ELCRA"). *See* ECF No. 1.

Presently before the Court are four motions. First is Defendant's Motion *In Limine* Regarding Miller's Hearsay and Irrelevant Statements; it was filed on May 2, 2023 [ECF No. 46]. Plaintiff responded on May 16, 2023, and Defendant replied on May 22, 2023. Secondly, Plaintiff's Motion *In Limine* [ECF No. 47] is before the Court. It was filed on May 2, 2023 and Defendant responded on May 16, 2023. Third, Plaintiff's Motion *In Limine* to Strike/Exclude Defendant's Untimely Disclosed Witness and Expert Report or Alternatively, For leave to Amend the Complaint [ECF No. 61] was filed on September 22, 2023. Defendant responded on October 6, 2023. Plaintiff did not file a reply. Lastly, Defendant's Motion to Dismiss, or in the Alternative, to Strike Testimony of Gerald Burns, or to Adjourn Trial and to Reopen Discovery was filed on September 22, 2023. Plaintiff responded on October 5, 2023, and Defendant replied on October 9, 2023. The Court heard oral argument on October 18, 2023. All motions are fully briefed.

As set forth in greater detail below: (1) ECF No. 46 is **GRANTED IN PART AND DENIED IN PART**; (2) ECF No. 47 is **GRANTED IN PART AND DENIED IN PART**; (3) ECF No. 61 is **DENIED**; and (4) ECF No. 60 is **GRANTED IN PART AND DENIED IN PART**. ECF No. 60 **GRANTED** as to Defendant's request to adjourn trial and reopen discovery. ECF No. 60 is **DENIED** with respect to Defendant's motion to dismiss and/or strike the testimony of Gerald Burns.

## II. <u>FACTUAL BACKGROUND</u>

At the time this action was filed, Plaintiff Gayann Miller was a 52-year-old white female.  ECF No. 26, PageID.749.  She started working at SMART in 2015 as a "fixed route operator," or bus driver.  ECF No. 7, PageID.40.  In June 2017, Miller applied for a Road Supervisor role within SMART. ECF No. 28, PageID.926. SMART's Human Resources team filtered applications for qualified candidates. ECF No. 26-6, PageID.817. An interview panel made up of the Terminal Managers for Macomb County, Oakland County, and Wayne County, an HR representative, and sometimes the Director of Transportation, interviewed all qualified applicants at least once.  ECF No. 23-2, PageID.163.

When Miller interviewed in July 2017, her panel consisted of Transportation Director Tony Vinson, a White man, Oakland County Terminal Manager Carol Martin, a Black woman, and Wayne County Terminal Manager Darren Beach, a Black man.  *Id.*  These three individuals, and HR representative Tanzania Talbert, sat in each Supervisor interview Miller had.  ECF No. 28, PageID.929; ECF No. 29, PageID.937; ECF No. 30, PageID.948. Leeya Sutton, a white female HR representative, also sat in Miller's 2019 interview.

The panel discussed candidates' performance after each interview and reached a consensus on bullet-point notes summarizing them.  ECF No. 26-6, PageID.818. Decisions pertaining to the selection of candidates who would receive

second-round interviews for the Supervisor role needed unanimous approval from all panelists. *Id.* Stated differently, the panel must reach a consensus before selecting an applicant.

Miller interviewed well, making the final interview round in July 2017. *Id.* Although she received an "[e]xcellent evaluation" and "[d]isplayed leadership abilities", the panel did not select Miller for the Supervisor role. *Id.* Instead, the panel selected a Black male with less supervisor experience and a "[m]ediocre evaluation." *Id.* at 928. Miller was the only White applicant of twenty people who applied for the Supervisor position.

Undeterred, Miller applied again in November 2017 for two more Supervisor openings. ECF No. 29, PageID.934. Again, HR selected her and 48 other applicants for interviews, seven of whom were White and 41 were Black. *Id.* SMART's interview panel selected four people—three Black men and one Black woman—for second-round interviews. *Id.* at PageID.933. Only one person from that group had comparable experience to Miller. *Id.* The two selected candidates provided "well thought out and detailed" responses in their interviews, however, compared to Miller's "brief" answers. *Id.* at PageID.933–934.

Miller applied a third time for two additional Supervisor openings in May 2019. ECF No. 30, PageID.940. HR selected her and 36 others for interviews, five of whom were White and 31 were Black. ECF No. 30, PageID.942–947.

SMART's interview panel highlighted Miller's "[c]oncerns with conflict resolution skills" and inability to "show priority to urgent matters." *Id.* at PageID.944. Miller did not receive a second interview. *Id.* Instead, SMART interviewed ten other individuals, nine of whom were Black. *Id.* at PageID.946–947. SMART's interview panel selected two Black men for the Supervisor roles, both of whom had more supervisor experience than Miller and who each received "excellent employee evaluation[s]." *Id.* at PageID.950–951. Miller subsequently commenced this employment discrimination action on May 5, 2020, which is now ripe for trial scheduled for November 7, 2023.

As detailed below, each the motions currently pending before the Court has factual background, law, and analysis unique to that respective motion for purposes of this Opinion and Order. For efficiency purposes, however, the Court will only discuss in the immediately proceeding section (Section III) the law applicable to all motions *in limine*, and it will discuss the factual background, law, and analysis particular to each respective motion in the section that corresponds to that motion, if necessary. Each motion is discussed in sequential order. However, for clarity and conciseness, the Court will discuss ECF No. 60 last.

## III.   **DISCUSSION**

### A. APPLICABLE LAW REGARDING MOTIONS *IN LIMINE*

The purpose of motions *in limine* is to obtain advance rulings on the admissibility of evidence so that trial preparation is facilitated, distractions during trial are reduced, legal issues can be deliberated more "serenely," and the risk of exposure of the jury to inadmissible evidence can be minimized. *United States v. Hamilton*, 574 F. Supp. 3d 461, 466 (E.D. Mich. 2021). District courts retain a high level of discretion in granting, denying, or later modifying decisions on motions in *limine*. See *Branham v. Thomas Cooley Law Sch.*, 689 F.3d 558, 560 (6th Cir. 2012) (reviewing a district court's order on a motion in *limine* for abuse of discretion). A grant or denial of a motion in *limine* does not foreclose the possibility that it may be changed later. *Id*. at 562. ("Even if nothing unexpected happens at trial, the district judge is free… to alter a previous in *limine* ruling."). This discretion runs concurrent with the high standard that must be met to exclude evidence. The exclusion of evidence in *limine* should only occur when "evidence is clearly inadmissible for any purpose." *Id*. at 846.

The Court is responsible for determining all preliminary questions of admissibility under the Federal Rules of Evidence ("FRE"). See Fed. R. Evid. 104(a). FRE 402 states that all relevant evidence is admissible unless any of the following provides otherwise: the Constitution, a federal statue, another rule of

evidence or rule prescribed by the Supreme Court. *See* Fed. R. Evid. 402. Irrelevant evidence is inadmissible. *Id.* The test for relevant evidence is stated under FRE 401, which provides that evidence is relevant if it "has the tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining that action." Fed. R. Evid. 401. The standard for relevancy is "extremely liberal." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009). "[E]ven if a district court believes that evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative [value]." *United States v. Whittington*, 455 F.3d 736, 738–39 (6th Cir. 2006) (alteration in original) (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 475 (6th Cir. 1996)).

However, relevant evidence may nonetheless be inadmissible if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.

### B. ANALYSIS

### 1. ECF NO. 46: DEFENDANT'S MOTION *IN LIMINE* REGARDING MILLER'S HEARSAY AND IRRELEVANT STATEMENTS

Plaintiff was deposed on October 8, 2020. In that testimony, she claimed that Carol Martin, a former SMART Superintendent, told several people "[t]hat white girl will never get a promotion on my watch." ECF No. 46-2, PageID.1125. Plaintiff claims that Martin allegedly made this comment to a radio repairman named Spence and a dispatcher named Shalanda Ware. *Id*. Plaintiff says that her coworker, Danella Marquez told Plaintiff that Spence told Marquez that Martin made this racially biased comment. *Id*. Miller also testified that "other people" told Plaintiff that Martin "said something about [Plaintiff's] race" to Ware. ECF No. 46-2, PageID.1126. Defendant asks the Court to exclude the foregoing statements at trial, arguing that they constitute inadmissible hearsay, they are irrelevant, and the probative value of the purported statements is substantially outweighed by the danger of unfair prejudice.

Hearsay is not admissible unless it meets one of a select number of exceptions provided in the Federal Rules of Evidence. See Fed. R. Evid. 802. *See United States v Mendez*, 303 Fed App'x 323, 325-326 (6th Cir. 2008). The FRE defines hearsay as any statement that a declarant "does not make while testifying at the current trial" and is offered into evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "The proponent of a hearsay

statement bears the burden of proving each element of a given hearsay exception or exclusion." *United States v. Nero*, 598 F. Supp. 3d 568, 570 (E.D. Mich. 2022) (citing *United States v. Day*, 789 F.2d 1217, 1221 (6th Cir. 1986)).

Plaintiff argues that the "statements made by the supervisors [sic], Spence, and Marquez are admissible under FRE 801(d)(2) because all of these individuals were employees or agents of the Defendant." ECF No. 52, PageID.1440. FRE 801(d)(2) provides that an out of court statement being used to prove the truth of the matter asserted is excluded from the definition of hearsay if it is offered against an opposing party and: (A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; and (D) was made by the party's agent or employee on a matter within the scope of that relationship while it existed.

Ware's and Spence's statements constitute hearsay because Plaintiff introduces them to prove the truth of the matter asserted—that Martin said "that white girl will never get a promotion on my watch." Further, they are not excluded from the definition of hearsay as opposing party statements. Spence's statement was allegedly made to Marquez, who then told Miller. The statement contains multi-layered hearsay. For hearsay within hearsay to be admissible, "each part of

the combined statements" must conform with an exception to the general exclusionary rule. Fed. R. Evid. 805.

Neither Spence's nor Marquez's statement satisfy this burden. First, it is not clear that the scope of Marquez's or Spence's employment concerned promotions or personnel decisions. Indeed, Plaintiff's brief says nothing about the job description of Marquez, and Spence is alleged to have been a radio repairman. Further, nothing in the statement—allegedly made by Martin, heard by Spence, and filtered to Miller through Marquez—demonstrates that SMART adopted the statement or believed it to be true; and Plaintiff does not argue as much in her brief. The same is true for the statement made by Ware because Ware was a dispatcher who is not alleged to have been involved in personnel decisions. *See Gaines v. FCA US LLC*, 522 F. Supp. 3d 295, 301 (E.D. Mich. 2021) (Supervisor's statements concerning department manager's animus toward African American women were not within scope of his agency or employment, and therefore female African American former employee could not testify about them in her action against employer alleging race and gender discrimination, since supervisor was not decision-maker with respect to employer's personnel decisions or policies and he did not have ability to influence personnel decision with respect to employee). As such, both Ware's and Spence's statements, as offered to prove the truth of the

matter asserted, do not satisfy Rule 801(d)(2). This includes Ware's statement that "other people" told Plaintiff that Martin "said something about [Plaintiff's] race."

Plaintiff also argues that the "testimony may be admissible to prove motive or intent, [and] it may also be admissible to show the effect on the listener." ECF No. 52, PageID.1440. FRE 803 (3) provides that, the following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: ". . . . [a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) . . . but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." If Martin made the alleged statement regarding Plaintiff's desired promotion, it is directly probative of her state of mind as a personnel decision maker regarding Plaintiff's desire to be promoted.

In the Sixth Circuit, discriminatory statements by a decisionmaker may constitute direct evidence of discrimination under certain circumstances. *Nasrallah v. Robert Half Int'l, Inc*., No. 1:19-CV-00795, 2020 WL 1862657, at *5 (N.D. Ohio Apr. 14, 2020) (citing *Talley v. Bravo Pitino Rest., Ltd*, 61 F.3d 1241, 1243-44 (6th Cir. 1995), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). In *Talley*, there was evidence that one of the owners and the general manager of a restaurant from which the plaintiff had been fired had used racial slurs on a number of occasions.

*Talley*, 61 F.3d 1241, 1243-44. The general manager also used racial slurs to express an opinion about the limited nature of the work he believed African Americans were capable of or should be performing. *Id*. at 1244. The court held that these racist comments constituted evidence that the plaintiff's termination may have been racially motivated and were admissible under FRE 803(3), noting that "the repeated usage of racial slurs" in the case could not be described as isolated or abstract. *Id*. at 1249.

On the other hand, in *Wilson v. Ohio*, the Sixth Circuit concluded that a superior's "reference to men as 'pig f—kers' " did not constitute direct evidence of discrimination because "such a comment on its own requires an inference to conclude that sexist consideration motivated the employment decisions of which plaintiff complains." *Wilson v. Ohio*, 178 F. App'x 457, 463 (6th Cir. 2006); *see also Foster v. Michigan*, 573 F. App'x 377, 393 (6th Cir. 2014) (holding that the statement, "no woman should be making that kind of money[,]" did not amount to direct evidence of sex-based discrimination, because it was a singular statement unrelated to any adverse employment action). *Wilson* and *Foster* do not rely on FRE 803, but they shed light on the kinds of evidence that may be used to show a discriminatory motive.

Although Martin is not alleged to have repeatedly made disparaging comments about White women, she is alleged to have made the disparaging

statement in direct connection with her decision-making process for promotions. Her statement can be interpreted as an expression of intent to discriminate by not promoting Plaintiff based on her race. And Martin's alleged statement was related to an adverse employment action. As such, it is admissible for the purpose of showing intent or motive under FRE 803(3). Further, Martin's purported statement is not excludable under FRE 403 because its high probative value is not substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. As such, Martin's alleged statement "that white girl will never get a promotion on my watch" will not be excluded as it is introduced to show motive and intent.

Defendant's Motion is **DENIED** with respect to its request to exclude Martin's alleged statement on hearsay grounds; the statement is admissible to show motive or intent under FRE 803(3). But Ware's hearsay statement that Martin said "something about Miller's race" is inadmissible, as it does not show motive or intent.

Plaintiff also testified that a number a road supervisors told her that Martin was racist and that she made racial comments, these supervisors allegedly included: Gerald Burns, Manuel Kemp, Williams Thomas and someone named "Claude". ECF No. 46-2, PageID.1126. These statements constitute hearsay as they are introduced to show that Martin was racist and that she made racial

-13-

comments. They are not opposing party statements, and they do not show motive or intent. To the extent they are introduced to show that Martin was racist, that she made racial comments, or that she had a discriminatory motivation, they are inadmissible. Plaintiff's statement regarding road supervisors' comments to her, made at an unspecified time and unconnected to Martin's personnel decisions, do not evidence Martin's or SMART's state of mind at the time that SMART declined to promote Plaintiff. Similar to the statements made in *Wilson* and *Foster*, referenced *supra*, the road supervisors' statements were not related to any adverse employment action and thus do not demonstrate a discriminatory motive. Plaintiff's hearsay statements regarding what the road supervisor said about Martin being racist and her making racial comments are not admissible under FRE 803(3).

To the extent that Plaintiff argues that the road supervisor's statements are admissible to show the effect on the listener, they do not satisfy FRE 403. The statement's effect on Plaintiff, or on the individuals to who allegedly heard Martin make racial comments, are minimally probative on the question of whether SMART discriminated against her based on her race. On the other hand, the statements are highly prejudicial and have the potential to allow the jury to draw an impermissible inference suggesting that, because Martin made racial comments unconnected to Plaintiff's desired promotion, she influenced SMART to discriminate against Plaintiff. Any minimal probative value the statements have is

-14-

substantially outweighed by the danger of unfair prejudice. As such, the Court will exclude Plaintiff's statement that road supervisors said Martin was racist. Plaintiff's statement that the road supervisors told her that Martin made the racial comments will be excluded as well. Defendant's Motion is **GRANTED** on this ground.

During her deposition, Plaintiff testified that Defendant's employees in dispatch treated her differently than other employees who were African American. These employees included Shalanda Ware and Shakeisha Burkee. She also testified that she overheard Ware and Burke make racial comments. ECF No. 52, PageID.1442. She specifically testified that Burkee "would talk about the white man and not going to work for the white man's dollar," and that "white people have a sense of entitlement." ECF No. 46, PageID.1098. None of these statements constitute hearsay, as they are not being introduced to prove the truth of the matter asserted in the statements.

However, Plaintiff's statement about other African American dispatchers treating her different and about Ware and Burkee making racial comments are not relevant to the present action. Neither Ware nor Burkee were involved in hiring decisions, no evidence shows that they influenced hiring decisions, and the treatment she received from them is not probative of whether the personnel decision makers discriminated against her. On the other hand, the statement has

-15-

great potential to confuse the jury by allowing them to infer that, because non-decision-making employees at SMART made racial comments and treated her differently, SMART may be held liable for discrimination in failing to promote Plaintiff. Such an inference would be erroneous. Thus, Plaintiff's statement regarding Ware and Burkee does not satisfy FRE 401 or FRE 403. The statement will be excluded. Defendant's Motion is **GRANTED** on this ground.

However, Plaintiff's testimony suggesting that there were no Caucasian supervisors during Martin's tenure is relevant because it may constitute circumstantial evidence of discrimination. Though the alleged discrimination occurred in 2019, Martin is alleged to have played a role in that discrimination and her alleged bias may be shown by demonstrating a pattern that began before Plaintiff applied for the position in 2019. And the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. As such, to the extent that Plaintiff's statement pertaining to the lack of Caucasian supervisors during Martin's tenure is supported by her personal knowledge, it will not be excluded. Defendant's Motion is **DENIED** on this ground.

Plaintiff testified that Vernon Williams, who was promoted over Plaintiff, attempted to blame a trainee for an accident for which Williams was at fault. Specifically, Plaintiff testified that the trainee, Mr. Baker, told her: "Vernon was going to let [Mr. Baker] take the rap for his accident. Vernon fell asleep driving

Southfield Road[.]" ECF No. 46, PageID.1098.  Plaintiff's statement about what Baker told her is hearsay. It is being introduced to show that Williams was going to let Baker take blame for a mistake Williams made. This statement does not satisfy any hearsay exceptions. Notably, it is not an opposing party statement, as Plaintiff has not carried its burden of showing that it was made within the scope of Baker's employment or that SMART adopted the statement and believed it to be true. Accordingly, Plaintiff's statement about the information Baker relayed to her about Williams will be excluded. Defendant's Motion is **GRANTED** on this ground.

 However, Plaintiff will be allowed to testify regarding any personal knowledge she has pertaining to Vernon Williams's detrimental conduct on the job. This could be circumstantial evidence of discrimination because it tends to show that Williams was promoted over Plaintiff even though he was allegedly less suitable for the position. And the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.

Finally, Defendant says, "Miller will testify that, . . . 90% of SMART bus drivers urinate on their busses during their routes." ECF No. 46, PageID.1099. To the extent that Miller has personal knowledge of such conduct, she will be allowed to testify about it. This evidence is relevant because Miller previously urinated in a cup while on her bus, which Defendant says, "cuts against her theory of racial animus." *Id*. at PageID.1107. The probative value of this testimony is not

substantially outweighed by the danger of unfair prejudice under FRE 403. Defendant's Motion is **DENIED** on this ground.

Defendant's Motion ECF No. 46 is **GRANTED IN PART AND DENIED IN PART**. The Court will discuss ECF No. 47 next.

### 2. ECF NO. 47: PLAINTIFF'S MOTION *IN LIMINEE* TO EXCLUDE EXTRINSIC EVIDENCE.

Plaintiff moves *in limine* to preclude Defendant "from making arguments about extrinsic evidence to contradict witnesses on collateral matters[,]" including evidence pertaining to Plaintiff being disciplined on various occasions. Plaintiff asserts that evidence regarding the following should be excluded:

(a) November 5, 2019 accident and complaints concerning road supervisor Vernon Williams;

(b) November 6, 2019 complaint about Williams touching Plaintiff;

(c) November 13, 2019 three disciplinary allegations involving alleged smoking on bus, urination in paper cup, failing to finish route, and the corresponding November 19, 2019 verbal warning regarding same;

(d) November 26, 2019 discipline for "cutting the run" and December 2, 2019 Grievance filed by Plaintiff concerning the same.

(e) January 14, 2020 Meeting with Smart EEO Manager concerning incident with Vernor Williams;

(f) May 20, 2020 allegation concerning urination on a bus and smoking around bus as a result of complaint by customer about allegedly not stopping;

(g) May 29, 2020 discipline concerning May 20, 2020 incident; (h) June 2, 2020 grievance concerning same, above;

(h) July 24, 2020 email, and July 31, 2020-August 24, 2020 LOA with SMART evaluation, and psychiatric evaluation by Dr. Elissa Benedek.

ECF No. 47, PageID.1258. Plaintiff says the foregoing evidence should be excluded under Fed. R. Evid. 608(b), which provides that extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. *Id*.

Defendant responds, arguing that, the evidence of Plaintiff's disciplinary events and grievances, which allegedly caused her to suffer emotional distress during the time after the failure to promote occurred, do not constitute "collateral matters" under FRE 608(b). ECF No. 53, PageID.1532. Defendant's argument continues, averring that there is no basis to exclude evidence of discipline Plaintiff received or grievances she filed because "the evidence will be introduced for the proper purpose of determining the extent to which these grievances and discipline have caused Plaintiff's alleged emotional distress, which is central to the claims she has asserted, and her claimed damages." *Id*.

The Court agrees. Plaintiff seeks an award for emotional distress based on SMART declining to promote her in 2019, and the disciplinary events and grievances at issue here allegedly caused Plaintiff emotional distress as well during the relevant time period for which Plaintiff seeks damages. They do not constitute "collateral matters" under FRE 608 (b).  FRE 608(b) provides that,

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> (1) the witness; or
>
> (2) another witness whose character the witness being cross-examined has testified about.

As Defendant points out, the evidence Plaintiff references is admissible despite the extrinsic evidence rule because it will be used to impeach Plaintiff's testimony regarding the source of her emotional distress; its impeachment value does not pertain to her character for truthfulness. ECF No. 53, PageID.1531; *See, e.g., Boutros v Canton Regional Transit Authority*, 997 F2d 198, 204-205 (6th Cir 1993) (holding that Rule 608(b) not applicable to testimony or other evidence that is relevant to material issues in the case); *see also Foster v General Motors Corp*, 20 F3d 838, 839 (8th Cir 1994) ("Rule 608(b) does not apply to extrinsic evidence that is offered to impeach a witness's testimony on a material issue"). The evidence of disciplinary actions and Plaintiff's grievances is relevant in determining the mental and emotional impact of the claimed discrimination at issue in this case and the extent to which it caused Plaintiff's purported damages. Further, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice or jury confusion under FRE 403. It gives the jury a

nonspeculative basis on which to award damages for emotional distress, if any. Any potential prejudice can be cured with a limiting instruction if Plaintiff so requests. On this ground, Plaintiff's Motion is **DENIED**.

Plaintiff also requests that the Court exclude any evidence related to the Plaintiff's: (1) July 6, 2018- July 24, 2018 leave of absence due to anxiety; (2) July 13, 2018 application for short term disability benefits; (3) February 19, 2019- August 22, 2019 FMLA leave for anxiety; and (4) July 1, 2019 FMLA application with leave beginning on July 5, 2019. Plaintiff says the evidence has "no relevance to the Plaintiff's racial discrimination case, and it could tend to confuse the issues at Trial." ECF No. 47, PageID.1258. Defendant says it does not seek to introduce evidence of disability pension benefits or social security benefits. ECF No. 53, PageID.1532. However, Defendant avers that Plaintiff's leaves of absence due to stress, anxiety and other emotional reasons are relevant to her claim for emotional damages. *Id*. The Court agrees, and the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. Any potential prejudice may be cured with a limiting instruction if Plaintiff so requests. Plaintiff's Motion is **DENIED** on this ground.

Next, Plaintiff requests that the Court exclude any evidence related to Plaintiff's bankruptcy action because it is "irrelevant." Defendant says it "does not intend to introduce evidence of Plaintiff's bankruptcy action, nor should Plaintiff

be allowed to introduce evidence of her bankruptcy action or her need for money." ECF No. 53, PageID.1533. As such, Plaintiff's Motion is **GRANTED** on this ground.

Plaintiff argues that Defendant should be precluded from arguing personal opinions at trial. Defendant says Plaintiff "has not provided any basis for her subjective belief that Defendant would somehow raise improper arguments at trial, and Defendant most certainly does not intend to make improper arguments regarding motivation at trial." ECF No. 53, PageID.1533. Miller also requests that the Court exclude any testimony from defendant's witnesses concerning or consisting of conjecture, speculation, or guesses. Defendant agrees that "no witnesses should be allowed to offer testimony based upon conjecture, speculation, or guesses." *Id*. Miller similarly requests that the Court preclude arguments that the lawsuit has been instigated, contrived, or encouraged by the Plaintiff's attorneys. Defendant says that, "absent evidence or arguments that develop at trial that would make such an argument relevant, Defendant agrees that neither plaintiff nor defense counsel should be allowed to argue that the lawsuit or the defense to the lawsuit has been instigated, contrived or encouraged by the attorneys." *Id*. Lastly, Miller requests that the Court preclude any reference to the type or character of the legal practice of the attorneys for Plaintiff. Defendant agrees that "any reference to the type or character of the legal practice of any of the attorneys

-22-

in this case would be irrelevant." As such, because there is no dispute regarding the relief requested, the Court will **GRANT** Plaintiff's Motion on these grounds.

Next, Miller asks that the Court exclude evidence that she has engaged in "extraneous specific instances of bad conduct". ECF No. 47, PageID.1262. But she does not reference any anticipated evidence or instances of bad conduct, or the rule that would bar such evidence. Defendant "admits that Fed. R. Civ. P. 608 addresses a witness's character for truthfulness or untruthfulness, and that the rule of evidence applies to all parties in this case." ECF No. 53, PageID.1534. However, given that Plaintiff does not reference any specific acts that would be barred from evidence by FRE 608, the Court will **DENY** relief on this ground.

Miller seeks to exclude mention to the jury of any rulings by this Court on any motions. Defendant says it "does not intend to refer to court rulings unless plaintiff makes arguments or introduces evidence which would make a reference to such court rulings relevant." ECF No. 53, PageID.1534. Defendant also requests that the Court "similarly instruct plaintiff counsel that any references to court rulings in the presence of the jury would be improper." *Id*. Plaintiff's Motion is **GRANTED**, neither party will be permitted to discuss this Court's rulings in front of the jury. Counsel must object and call for a side bar to discuss any court rulings.

Miller seeks to exclude any reference to the probable testimony of a witness who is absent, unavailable, or not called to testify in this case. Defendant does not

object to this proposed ruling to the extent that it applies to all parties and counsel. Plaintiff's Motion is **GRANTED** on this ground, and this ruling applies equally to all parties and counsel.

Miller seeks to exclude any evidence or arguments of the effect of the case, verdict, or judgment on the Defendant as they are irrelevant. Defendant says such evidence is relevant because Plaintiff is seeking punitive damages and Defendant should be allowed to raise relevant arguments regarding the punitive damages sought by plaintiff. *Id*. Plaintiff does not respond to this argument and does not cite a rule requiring exclusion of such evidence. Plaintiff's Motion is **DENIED** on this ground.

Plaintiff seeks to exclude any argument that the jurors should put themselves in the position of Defendant. Defendant does not object to this proposed ruling to the extent that it applies to all parties and counsel. Plaintiff's Motion is **GRANTED** on this ground, and this ruling applies equally to all parties and counsel.

Plaintiff seeks to exclude any statement or suggestion as to the probable testimony of any witness or alleged witness who is unavailable to testify. Defendant does not object to this proposed ruling to the extent that it applies to all parties and counsel. Plaintiff's Motion is **GRANTED** on this ground, and this ruling applies equally to all parties and counsel.

-24-

Plaintiff seeks to exclude any testimony as to what the law provides, and legal conclusions drawn by Defendant's witnesses regarding what the law requires. Miller asserts that instructing the jury on the law is the sole province of the Court and is not a subject upon which expert testimony is appropriate. Defendant does not plan to call an expert to testify regarding what the law provides. *Id*. It asserts, however, that, if the understanding of the law by a witness is relevant, the witness should be allowed to testify as to his or her understanding of the law. The Court agrees with Defendant. Plaintiff Motion is **DENIED** on this ground. Witnesses will not be permitted to "instruct" the jury on what the law requires, but they may convey their understanding of the law to the jury if it is relevant.

Finally, Miller seeks to exclude any reference to the fact that she has filed a motion *in Limine* requesting relief from the Court or that such relief has been granted by this Court. Defendant says it does not intend to refer to motions *in limine* in the presence of the jury unless Plaintiff violates a ruling of the court in response to a motion *in limine*. ECF No. 53, PageID.1536. Defendant requests that the Court similarly instruct plaintiff counsel that any reference to a motion *in limine* in the presence of the jury would similarly be improper. Plaintiff's Motion is **GRANTED** on this ground. Neither party will be permitted to discuss motions filed or this Court's rulings in front of the jury. Counsel must object and call for a side bar to discuss any court rulings.

ECF No. 47 is **GRANTED IN PART AND DENIED IN PART**, as stated *infra*. The Court will discuss ECF No. 61 next.

3. **ECF NO. 61: PLAINTIFF'S MOTION IN LIMINE TO STRIKE/EXCLUDE DEFENDANT'S UNTIMELY DISCLOSED WITNESS AND EXPERT REPORT OR ALTERNATIVELY, FOR LEAVE TO AMEND COMPLAINT**

Plaintiff contends that she "was sent for a completely unnecessary 'independent' medical examination by Dr. Harvey Ager, a psychiatrist, on July 19, 2023." ECF No. 61, PageID.1754. She claims that Defendant listed Dr. Ager and his report resulting from that evaluation as anticipated trial evidence and that they both should be stricken because they were submitted after the disclosure deadline, in violation of Fed. R. Civ. P. 26. *Id*. Alternatively, if such evidence is not excluded, Plaintiff asserts that she should be granted leave to amend her complaint to renew a claim of retaliation/interference, "as this evidence exhibits an attempt by Defendant to harass [Plaintiff] into leaving her employment with them in retaliation for her utilizing FMLA and asserting her rights in the present lawsuit." ECF No. 61, PageID.1755.

Defendant says that it did not schedule Plaintiff's independent medical examination with Dr. Ager. Rather, that medical examination was scheduled for Plaintiff by her disability insurance carrier, ASU Group, as a result of her recently filed claim for short-term disability benefits. ECF No. 64, PageID.2051. Defendant admits that neither party had an opportunity to conduct discovery with respect to

Dr. Ager. However, it asserts that the disclosure was only untimely because Plaintiff recently filed her application for disability benefits, an action that cannot be imputed to Defendant. Further, Defendant says "Plaintiff reference to FMLA and its relationship to her request to amend her complaint" due to the untimely disclosure of Dr. Ager's report is "unclear." *Id*. at PageID.2055. According to Defendant, Plaintiff recently filed a claim for FMLA benefits that was denied because Plaintiff had already used all her allowed FMLA time off. *Id*.

Lastly, Defendant asserts that Plaintiff's motion to amend must be denied because Plaintiff failed to attach a proposed Amended Complaint to her motion. As a result, her motion cannot withstand the futility challenge because she failed to state a claim for which relief may be granted by not filing a proposed Amended Complaint. *Id*.

Plaintiff blames Defendant for the untimely disclosure, accusing it of having a "clear dilatory" motive to do trial "by surprise" or delay case. But Plaintiff's assertion is not well taken by the Court. Plaintiff, who is represented by counsel, should know that it was her insurance carrier who required her to submit to examination, not the Defendant. It was Plaintiff who brought these circumstances into existence by virtue of her application for disability insurance benefits, not the Defendant. Further, she cannot claim to be surprised by a medical examination that

was scheduled on June 27, 2023, and occurred on July 19, 2023, as a result of her application.

Plaintiff urges the Court to strike the Dr. Ager from the witness list as well as his report. The Court will not do so, as the untimely disclosure was substantially justified. "If a party fails to provide information or identify a witness as required by Fed. R. Civ. P. 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Sixth Circuit identified five factors to consider when assessing whether a party's omitted or late disclosure is "substantially justified" or "harmless": " '(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.' " *Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015).

That Plaintiff was surprised by the disclosure of Dr. Ager and his report is doubtful. Nonetheless, as Defendant notes, "that surprise can be cured by allowing Plaintiff to take the discovery deposition of Dr. Ager." ECF No. 64, PageID.2052. Yet, Plaintiff made no such request. Considering the factors stated above, the explanation proffered by Defendant for the untimely disclosure demonstrates that

the untimely disclosure was substantially justified. Accordingly, the Motion to strike is **DENIED**.

To the extent that Plaintiff requests, in the alternative, to amend the complaint. The Court construes the request as a motion for leave to amend the complaint. Plaintiff seeks to amend the complaint in order to allege a retaliation claim. But the Court already entered an order granting Defendant summary judgment on Plaintiff's retaliation claim, *inter alia*. At oral argument, Plaintiff appeared to assert that her retaliation claim arises from the requirement—imposed by her insurance carrier—that she submit to a medical examination. This requirement arose in connection with her disability insurance carrier and cannot be attributed to Defendant. Plaintiff also appeared to assert at oral argument that her retaliation claim arises from Defendant's denial of her request for FMLA benefits, but as stated *supra*, that request was denied for a non-retaliatory reason: because Plaintiff had already used all her allowed FMLA time off. Plaintiff did not file a reply brief and has failed to dispute this allegation.

Based on the foregoing, the Court finds that Plaintiff's motion for leave to amend fails to state a claim for retaliation, as it contains no legal foundation or factual allegations to support such a claim, suggesting that amendment would be futile. Indeed, Plaintiff fails to attach a copy of the proposed amended complaint to her motion for leave, in violation of local rule 15.1. See E.D. Mich. L.R. ("A party

who moves to amend a pleading shall attach the proposed amended pleading to the motion. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference."). Although "failure to comply with this Rule is not grounds for denial of the motion[,]" *id*, the Court believes amendment would be futile. Thus, Plaintiff's motion for leave to amend the complaint is **DENIED**. The Court will discuss ECF No. 60 next.

### 4. ECF NO. 60: DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE TESTIMONY OF GERALD BURNS, OR TO ADJOURN TRIAL AND TO REOPEN DISCOVERY AND MOTION FOR SANCTIONS

Gerald Burns was first deposed on May 7, 2021, in connection with this matter. Burns testified at his discovery deposition regarding Carol Martin that he did not have any opinion as to whether Martin was a racist, that he had never heard Martin (a Black woman) say anything that made him feel she was prejudiced toward White people, and that no one else at SMART had ever told him that Martin was racist. Over two years later, on September 5, 2023, Plaintiff noticed the *de bene esse* trial deposition of Burns, and the deposition was held on September 8, 2023. Though the deposition was noticed via Zoom, Burns appeared live in Plaintiff's counsel's office. Plaintiff did not supplement her disclosures or discovery responses and did not inform Defendant that Burns was going to

contradict his prior testimony claiming, *inter alia*, that Martin told him she "would never hire a white person under [her] watch." ECF No. 60-3, PageID.1596.

At the deposition Burns was asked why he was changing his testimony; he stated the following:

- If I told anyone what Martin said I feared for retaliation if it got back to her.

- Q: Sir as you gave that deposition with the head of HR and SMART's lawyer in the room, was there anything that you were fearful about?

- A: I didn't want to say anything that would jeopardize my job.

- Q: And do you believe that if you would have said that you heard Carol Martin indicate that she would not hire a white person under her watch for that supervisor job, that that would have jeopardized your further employment?

- A: I felt that, I felt that it would have really put it to, into the light where they could have found a reason.

- Q: And why did you feel like that?

- A: I just didn't feel that, I just didn't want to rock the boat. I just felt unease doing the whole deposition, doing it. I just didn't want a light on me, you know, to shine on me now they looking at everything I do trying to find a reason to get me out.

ECF No. 60-3, PageID.1598-99. Defendant notes that Martin retired from SMART on September 1, 2020, which was 8 months before Burns testified at his first deposition, taken on May 7, 2021.

Defendant asks the Court to dismiss Plaintiff's claims with prejudice pursuant to Fed. R. Civ. P. 37(c)(1)(C) and Fed. R. Civ. P. 37(b)(2)(A)(v) based upon Plaintiff's failure to disclose and supplement its disclosures with respect to Burns. Alternatively, Defendant requests that the Court strike Burns as a witness pursuant to Fed. R. Civ. P. 37(c)(1). If the Court does not strike Burns as a witness or dismiss the case, Defendant requests that the Court strike the trial deposition of Gerald Burns, adjourn the trial presently scheduled for November 7, 2023, and reopen discovery so that Defendant can "take the discovery-only deposition of Burns to explore when and why he decided to change his testimony and admit that he perjured himself at his first deposition". ECF No. 60, PageID.1564.

Plaintiff responds, asserting that Burns had reached out to the Plaintiff and told her that he wanted to be contacted by Plaintiff's Counsel about the Defendant's attorney's conduct at his discovery deposition. When Plaintiff's counsel contacted Mr. Burns about his expected trial testimony, Burns allegedly told Plaintiff's counsel that SMART'S lawyer, Cheryl Lord, coerced him into giving false testimony by kicking him under the table. Burns also testified that Leah Cyrus, the head of human resources at the time, sat next to him in the deposition. ECF No. 60-3, PageID.1598. Plaintiff's counsel also learned that Mr. Burns had been diagnosed with cancer in his spine and was undergoing debilitating treatment. Plaintiff thereafter scheduled what she says, "amounted to be an

emergency *de benne esse* deposition of Gerald Burns to preserve his testimony in the event he became unavailable." ECF No. 63, PageID.1791.

Burns testified that, "I can't remember the question that I was being asked, but . . . she [Ms. Lord] tapped, kicked my foot with her foot and the second time she tapped my knee." ECF No. 60-3, PageID.1599. According to Burns, this physical contact made him feel that "whatever I was about to answer, whatever I was about to say, not to say it." *Id*. at PageID.1560. Burns was asked if he was given any direction prior to the deposition to avoid mentioning the conversation that occurred with Carol Martin. He answered, "Yes. If I'm mistaken[,] I really was. I was told to be careful how I answer, if I'm not sure, or don't give an opinion. If I'm not sure, exactly sure -- I forgot the 1words they used but, you know, don't answer it." *Id*. According to Burns: "I felt I would face repercussions if I disclosed in my deposition what Martin said, because it would have got back to Carol and I know that I[sic] would, it just wouldn't have been nice. Second, I was really nervous because I was sitting in front of them and I kind of felt like I had to jump on their team."

In light of the foregoing, the Court will not dismiss the case and it will not strike Burns's trial deposition at this point. *See Dickenson v Cardiac & Thoracic Surgery of Eastern Tennessee*, 388 F3d 976, 983 (6th Cir 2004) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless

non-disclosure was justified or harmless.") (internal quotation omitted). Mr. Burns's cancer treatments obviated the need for his *de benne esse* deposition and given his abrupt change in testimony—which plainly contradicts the testimony he gave in his discovery deposition—the Court finds that the untimely disclosure was substantially justified. Further, the Court is not persuaded, based on the parties' briefing, that Plaintiff engaged in bad faith. However, the Court will adjourn trial and reopen discovery for the limited purpose of determining the full scope of the reasons for Burns's change in testimony. Accordingly, Defendant's Motion is **DENIED WITHOUT PREJUDICE** with respect to the request for sanctions and **GRANTED** with respect to the request for adjournment and reopening of discovery. The trial will be rescheduled for **November 29, 2023**.

Plaintiff's response also incorporates a Motion for Sanctions in the Form of Default Judgment Against Defendant for Discovery Misconduct. See ECF No. 63. It argues that Plaintiff's counsel suborned perjury, but the Court is not persuaded of as much, based on Plaintiff's brief. Further, Plaintiff's motion is improper. E.D. Mich. L.R. 7.1(i) provides that "Motions must not be combined with any other stand-alone document. For example, . . .a countermotion must not be combined with a response or reply, and a motion for downward departure must not be combined with a sentencing memorandum. Papers filed in violation of this rule will be stricken...." By the plain terms of the Local Rules, Plaintiff cannot

combine her response brief with a motion for default. *See Clark v. Boat Holdings*, LLC, 2023 WL 2505891, Slip Op. at *7 (E.D. Mich 2023) (striking the plaintiff's motion for summary judgment raised in his response to the defendants' motion); and *Bradley v. Smith*, 2023 WL 6302999, Slip Op. at *7 (E.D. Mich 2023) ("If the parties would like the court to consider these issues, they need to file separate motions asking the court to do so."). Accordingly, Plaintiff's Motion for Default Judgment is **STRICKEN**. The Court will not consider the request for default. However, in light of the adjournment, Plaintiff is granted leave to file a motion for sanctions, if she so desires.

## IV.    Conclusion

As set forth in greater detail above: (1) ECF No. 46 is **GRANTED IN PART AND DENIED IN PART**; (2) ECF No. 47 is **GRANTED IN PART AND DENIED IN PART**; (3) ECF No. 61 is **DENIED**; and (4) ECF No. 60 is **GRANTED IN PART AND DENIED IN PART**. ECF No. 60 is **GRANTED** as to Defendant's request to adjourn trial and reopen discovery. ECF No. 60 is **DENIED** with respect to Defendant's motion to dismiss and/or strike the testimony of Gerald Burns.

The Court will adjourn the trial from **November 7, 2023, to November 29, 2023**. The adjournment is intended to allow Defendant limited discovery on Gerald

Burns's change in testimony. Also, during this additional time Plaintiff may conduct a discovery deposition of Dr. Ager.

**IT IS SO ORDERED.**

Dated:  October 19, 2023  /s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 19, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager