UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

G‌AYANN M‌ILLER,

        Plaintiff,

v.

S‌UBURBAN M‌OBILITY A‌UTHORITY FOR
R‌EGIONAL T‌RANSPORTATION,

        Defendant.
_____/

Case No. 20-cv-11122

U.S. D‌ISTRICT C‌OURT J‌UDGE
G‌ERSHWIN A. D‌RAIN

**OPINION AND ORDER REGARDING: (1) PENDING MOTIONS [ECF Nos. 72, 77, 80, and 81]; AND (2) DEFENDANT'S OBJECTION TO PLAINTIFF'S REQUEST FOR PRODUCTION [ECF No. 79]**

**I.    Introduction**

Plaintiff Gayann Miller ("Miller" or "Plaintiff") brings claims against Defendant Suburban Mobility Authority for Regional Transportation ("SMART" or "Defendant") for disparate treatment on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and in violation of the Elliot Larsen Civil Rights Act, ("ELCRA"), M.C.L. 37.2101 *et seq*. Discovery closed on September 30, 2021, the Court has decided discovery motions, dispositive motions, and motions *in limine*. Trial will begin on January 10, 2024.

Presently before the Court are several matters filed in December 2023. First, Defendant filed a Motion for Sanction of Dismissal, or Alternatively, to Strike

1

Gerald Burns as a witness, on December 15, 2023 [ECF No. 72] (the "Motion for Sanctions"). Plaintiff responded on December 29, 2023, and Defendant replied on January 5, 2024. Second, Defendant filed a Motion to Amend Final Pretrial Order to Include Surveillance Reports [ECF No. 77] on December 22, 2023. Plaintiff responded on the same day and Defendant replied on January 5, 2023. Those Motions are fully briefed.

Third, Plaintiff sent a request for production to Defendant to produce Richard Sauer at trial on December 26, 2023. Defendant objected to the request on December 28, 2023 [ECF No. 79]. Plaintiff did not reply. Fourth, Plaintiff filed a Motion to Quash Subpoena and for Protective Order [ECF No. 80] on December 29, 2023. Defendant responded on January 5, 2024, and Plaintiff did not reply. Defendant filed a supplemental response on January 7, 2024. Lastly, Plaintiff filed a Motion to Amend/Correct Proposed Joint Final Pretrial Order (Plaintiff's "Motion to Amend") [ECF No. 81]. Defendant responded on January 5, 2024, and Plaintiff did not reply. Those motions are not fully briefed. However, no further briefing is necessary for the Court to reach its conclusion.

Upon review of the briefing and applicable authority, the Court concludes that oral argument will not aid in the resolution of these matters. Accordingly, the Court will resolve the motions on the briefs. See E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below:

(1) Defendant's Motion for Sanctions [ECF No. 72] is granted in part and denied in part. It is **GRANTED** with respect to the request to strike Gerald Burns as a witness and to strike his trial deposition testimony; and it is **DENIED** with respect to the request to dismiss the case.

(2) Since Burns' testimony will not be admitted into evidence, Defendant's surveillance reports, which pertain solely to Burns' physical impairments, are irrelevant and Defendant's Motion to Amend the joint final pretrial order [ECF No. 77] is **DENIED**.

(3) Burns will not be permitted to testify at trial, therefore, Plaintiff's Motion to Quash the subpoena sent to him [ECF No. 80] is **MOOT.**

(4) Plaintiff Motion to Amend/Correct Proposed Joint Final Pretrial Order [ECF No. 81] is **DENIED;** Defendant's Objection as to Richard Sauer and the request for production [ECF No. 79] is **SUSTAINED**.

## II.     Factual Background

The factual background is stated in the Court's previous Opinion and Order regarding motions *in limine*, which the Court incorporates by reference. See ECF No. 66. This case arises from SMART's alleged disparate treatment of Miller based on her Caucasian race, including failing to hire her for a road supervisor position. Relevant to the instant matters are certain allegations the parties make about Gerald Burns, Miller's now-retired co-worker at SMART.

Gerald Burns was first deposed in connection with this matter on May 7, 2021. Burns testified at his discovery deposition regarding Carol Martin; undisputedly, he stated that he did not have any opinion as to whether Martin was a racist, that he had never heard Martin (a Black woman) say anything that made him feel she was prejudiced toward White people, and that no one else at SMART had ever told him

that Martin was racist. Over two years later, on September 5, 2023, Plaintiff sent notice to Defendant of a *de bene esse* trial deposition of Burns, and the deposition was held on September 8, 2023. Though the deposition was noticed via Zoom, Burns appeared live in Plaintiff's counsel's office. Before the deposition, Plaintiff did not supplement her disclosures or discovery responses and did not inform Defendant that Burns was going to contradict his prior testimony by claiming, *inter alia*, that Martin told him she "would never hire a white person under [her] watch." ECF No. 60-3, PageID.1596.

At the deposition Burns was asked why he was changing his testimony; he stated the following:

- A: If I told anyone what Martin said I feared for retaliation if it got back to her.

- Q: Sir as you gave that deposition with the head of HR and SMART's lawyer in the room, was there anything that you were fearful about?

- A: I didn't want to say anything that would jeopardize my job.

- Q: And do you believe that if you would have said that you heard Carol Martin indicate that she would not hire a white person under her watch for that supervisor job, that that would have jeopardized your further employment?

- A: I felt that, I felt that it would have really put it to, into the light where they could have found a reason.

- Q: And why did you feel like that?

- A: I just didn't feel that, I just didn't want to rock the boat. I just felt unease doing the whole deposition, doing it. I just didn't want a light on me, you know, to shine on me now they looking at everything I do trying to find a reason to get me out.

ECF NO. 60-3, PageID.1598-99. Defendant notes that Martin retired from SMART on September 1, 2020, which was 8 months before Burns testified at his first deposition, taken on May 7, 2021.

Based on the foregoing, Defendant filed a Motion to Dismiss, or in the Alternative, to Strike Testimony of Gerald Burns, or to Adjourn Trial and to Reopen Discovery on September 22, 2023. Plaintiff responded, asserting that Burns had reached out to the Plaintiff and told her that he wanted to be contacted by Plaintiff's Counsel about defense counsel's conduct at his May 2021 discovery deposition. When Plaintiff's counsel contacted Burns about his expected trial testimony, Burns allegedly told Plaintiff's counsel that SMART'S lawyer, Cheryl Lord, coerced him into giving false testimony by kicking or tapping him under the table. Burns also testified that Leah Cyrus, the head of human resources at the time, sat next to him in the deposition. ECF No. 60-3, PageID.1598. Plaintiff's counsel also allegedly learned that Mr. Burns had been diagnosed with cancer in his spine and was undergoing debilitating treatment. Plaintiff thereafter scheduled what she said, "amounted to be an emergency *de bene esse* deposition of Gerald Burns to preserve his testimony in the event he became unavailable." ECF No. 63, PageID.1791.

5

In the *de bene esse* deposition, conducted on September 8, 2023, Burns testified that, "I can't remember the question that I was being asked, but . . . she [Ms. Lord] tapped, kicked my foot with her foot and the second time she tapped my knee." ECF No. 60-3, PageID.1599. According to Burns, this physical contact made him feel that "whatever I was about to answer, whatever I was about to say, not to say it." *Id*. at PageID.1560. In the deposition, Burns was asked if he was given any direction prior to the deposition to avoid mentioning the conversation that occurred with Carol Martin. He answered, "Yes. If I'm [not] mistaken[,] I really was. I was told to be careful how I answer, if I'm not sure, or [sic] don't give an opinion. If I'm not sure, exactly sure -- I forgot the words they used but, you know, don't answer it." *Id*. According to Burns: "I felt I would face repercussions if I disclosed in my [May 2021] deposition what Martin said, because it would have got back to Carol and I know that I [sic] would, it just wouldn't have been nice. Second, I was really nervous because I was sitting in front of them and I kind of felt like I had to jump on their team." *Id*.

On October 19, 2023, the Court granted Defendant's motion in part and denied it in part without prejudice. The Opinion and Order noted,

> Mr. Burns's cancer treatments obviated the need for his *de bene esse* deposition and given his abrupt change in testimony—which plainly contradicts the testimony he gave in his discovery deposition—the Court finds that the untimely disclosure was substantially justified. Further, the Court is not persuaded, based on the parties' briefing, that Plaintiff engaged in bad faith. However, the Court will adjourn trial

6

> [which was previously scheduled for November 7, 2023] and reopen discovery for the limited purpose of determining the full scope of the reasons for Burns' change in testimony.

ECF No. 66, PageID.2227.

Defendant deposed Burns again on November 10, 2023. Burns testified that before Plaintiff's counsel scheduled his *de bene esse* deposition on September 5, 2023, Burns had not told anyone from Plaintiff's counsel's office that he intended to change his testimony or that he had cancer, nor had he ever spoken with Plaintiff's counsel until just before the September 8, 2023 deposition. ECF No. 72-1, PageID.2289. However, in response to questioning by Plaintiff counsel, Burns then testified that he had spoken to Plaintiff's counsel, via Zoom, on April 5, 2023 to discuss his testimony and cancer diagnosis. ECF No. 72-1, PageID.2310.

At his discovery deposition in November 2023, he testified that he used to go to the gym for recreation but that he had stopped going to the gym earlier in the year after being diagnosed with cancer. ECF No. 72-1, PageID.2291. Defendant also asserts that Burns used a cane at his deposition. ECF No. 72, PageID.2260. However, Defendant conducted video surveillance on Burns during the days and weeks before the November 10, 2023 deposition. The surveillance videos allegedly show Burns at Planet Fitness gym, lifting heavy weights and walking without a cane or any impediment. *Id*.

7

### III. Applicable Law and Analysis

Since the Court issued its last Opinion and Order denying the motion for sanctions without prejudice and finding that the delay in disclosure was substantially justified, new facts have emerged that move the Court to change its conclusion. Namely, Plaintiff discovered, in April 2023, that Burns had cancer and would fundamentally change his testimony. Plaintiff's discovery occurred five months before she sent notice of the *de bene esse* deposition to Defendant, a fact of which the Court was unaware when it entered its October 19, 2023 Opinion and Order.

Defendant avers that "Plaintiff's counsel elicited testimony from Burns, confirming that Plaintiff counsel knew that (1) Burns claimed to have cancer and (2) Burns intended to change his testimony for five months before he scheduled the 'emergency' deposition in September 2023[,]" giving Defendant only three days' notice to prepare. ECF No. 72, PageID.2259. Further, SMART asserts "that the entire basis for the 'emergency' trial deposition was a ruse specifically intended to sandbag SMART." *Id*. As such, Defendant argues that "Plaintiff's failure to supplement her disclosures and discovery responses or otherwise alert Defendant to this fundamental change in testimony by Burns" violates Fed. R. Civ. P. 26(a), Fed. R. Civ. P. 26(e), and warrants sanctions in the form of dismissal or by striking Burns' testimony under Fed. R. Civ. P. 37. *Id*. at PageID.2274.

8

Fed. R. Civ. P. 26(a)(1)(A)(i) requires initial disclosures. Specifically, a party must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information— that the disclosing party may use to support its claims or defenses…" *Id*. Fed. R. Civ. P. 26(e)(1)(A) requires that "[a] party who has made a disclosure under Rule 26(a) —or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response…in a timely manner if the party learns that[,] in some material respect[,] the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id*.

Fed. R. Civ. P. 37(c) in turn provides in pertinent part, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In addition, Fed. R. Civ. P. 37(c)(1)(C) authorizes the Court to impose "other appropriate sanctions," including dismissal.

As the Sixth Circuit has held, "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the

violation was harmless or is substantially justified." *Roberts ex rel Johnson v. Galen of Virginia, Inc*, 325 F3d 776, 782 (6th Cir 2003) (internal quotation omitted). It is the potentially sanctioned party's burden to prove that its violations of Rule 26 were harmless. *Id*. And it is generally within the trial court's discretion to impose sanctions for noncompliance with Rule 26. *Jordan v City of Cleveland*, 464 F3d 584, 600 (6th Cir 2006).

There is no dispute that Plaintiff made an initial disclosure pertaining to Gerald Burns as a witness. ECF No. 60-4, PageID.1627. She then discovered in April 2023 that Burns would potentially be unavailable and that he was fundamentally changing his testimony. Plaintiff did not disclose this information until September 5, 2023, a month before trial was scheduled to commence.

The Court takes no position on the state of Burns' health. However, it finds that Plaintiff's failure to supplement her disclosures is not substantially justified. In determining whether a party's noncompliance with its discovery obligations is substantially justified, courts consider: (1) surprise to party against whom evidence would be offered; (2) ability of that party to cure surprise; (3) extent to which allowing evidence would disrupt trial; (4) importance of evidence; and (5) the non-disclosing party's explanation for its failure to disclose evidence. *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015).

10

Considering the fifth—and perhaps the most salient—factor first, Plaintiff advances a sole explanation for her failure to supplement, which the Court recites *verbatim* below.

> Here, the failure to disclose primarily falls on Defendant. The parties had a full opportunity to take the discovery deposition of Gerald Burns to find out what his testimony would be. Defendant's intentional, willful, and bad faith subornation of perjury caused Plaintiff to be misled for YEARS of litigation about what his testimony would be at trial. Plaintiff had to rely on this deposition testimony in responding to Defendant's motion for summary judgment and other motions. Certainly, if Plaintiff knew that Burns had other testimony, she would have wanted that to come out during discovery. Plaintiff had NO WAY to know that Burns was being forced into silence by his employer, SMART.
>
> Moreover, Defendant obviously did not accurately disclose his anticipated testimony. Defendant's initial disclosures describe the anticipated testimony of Mr. Burns in the same fashion as Plaintiff: "may possess personal knowledge regarding the Plaintiff, allegations contained in Plaintiff's Complaint, and/or other information and documentation relevant to the claims at issue in this litigation." Thus, we now know that Defendant was aware of the true testimony of Mr. Burns, yet also did not update their boiler plate disclosures.

ECF No. 83, PageID.2617-18.

In Burns' *de benne esse* deposition, he testified about SMART's conduct during his first deposition and nothing in Burns' *de bene esse* testimony demonstrates that SMART told him, directly or indirectly, to give false testimony in his first deposition. Further, nothing in the record demonstrates that SMART knew that Burns' testimony—which stated that Martin had never said anything to him showing that she was prejudiced towards White people—was false at the time it was

given in his May 2021 deposition. Rather, the record shows that SMART discovered that Burns' testimony was not credible on September 8, 2023, the day of his *de benne esse* deposition. But Plaintiff made this discovery in April 2023 and even assuming *arguendo* that Plaintiff did not know at the time of Burns' May 2021 deposition that his testimony was false, the fact that Plaintiff was unaware at that time does not explain why she failed to disclose the fundamental change in testimony for five months after Burns informed her that he was changing his testimony. And Plaintiff sent a *surprise* notice of the *de benne esse* deposition to Defendant only one month before trial, allowing Defendants only three days' notice before the deposition occurred. In these circumstances, the record suggests that Plaintiff's failure to supplement her disclosures was the result of gamesmanship, rather than any justifiable mistake. Thus, with respect to factor two—surprise to the Defendant— and factor five—Plaintiff's explanation for the failure to supplement—the record establishes that Plaintiff's omission is not substantially justified.

Plaintiff fares no better with respect to the remaining factors. The adjournment of trial from November 7, 2023, to November 29, 2023 was the direct result of Plaintiff's failure to timely supplement her disclosures. Because the Court disrupted trial and extended discovery, Defendant was enabled to mitigate the surprise and take Burns' deposition. Now that the deposition has occurred, however, Burns' story has become more inconsistent, which, in turn, has required the Court to decide

several additional motions—despite the fact that motions *in limine* were decided on October 19, 2023 and this case should have been ready for trial on November 7, 2023.

Plaintiff's failure to supplement her disclosure of Burns as a witness is not substantially justified. Accordingly, Burns' testimony may not be introduced at trial to supply evidence for Plaintiff. See Fed. R. Civ. P. 37(c)(1); See also *Howe*, 801 F.3d at 747 (observing that it is within a district court's discretion to impose sanctions for a litigant's noncompliance with a discovery order or procedural rules). However, the Court will not impose dismissal as a sanction for the discovery violation.

Finally, as stated *supra*, Burns gave deposition testimony in 2021 stating that he never heard Carol Martin say anything prejudice towards white people. Given that the Court is excluding Burns' 180 degree change to this testimony under Rule 37 (stating in relevant part that ". . .the party is not allowed to use that information or witness to supply evidence . . . at trial . . .), Plaintiff will not be permitted to impeach Burns' 2021 deposition testimony, if it is given. Though Defendant requests the total exclusion of Burns as a witness and this issue is not addressed by the parties, the Court clarifies that Burns' 2021 deposition testimony will also be excluded from trial under Rule 37.[1]

---

[1] Additionally, if the Court were to permit Burns to testify consistent with 2021 deposition and allow Plaintiff to impeach that testimony, this case would turn into a mini-trial with convoluted facts surrounding Burns's cancer diagnosis, his change in

Defendant's Motion for Sanctions is **GRANTED IN PART** and **DENIED IN PART**. It is granted with respect to the request to strike Burns' trial deposition testimony and to strike him as a witness. It is denied with respect to Defendant's request to dismiss the case. No testimony from Gerald Burns will be admitted into evidence at trial.

Since Burns' deposition transcript will not be admitted into evidence, Defendants surveillance reports, which pertain solely to Burns' physical impairments, are irrelevant and Defendant's Motion to Amend the joint final pretrial order [ECF No. 77] is **DENIED**.

Burns will not be permitted to testify at trial, therefore, Plaintiff's Motion to Quash the subpoena sent to him is **MOOT**. [ECF No. 80].[2]

---

testimony, and the reasons for that change. Accordingly, Burns' testimony will also be excluded under Fed. R. Evid. 403 because its probative value is substantially outweighed by the danger of confusing the issues, undue delay, and wasting time. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

[2] The Court notes that SMART filed a response to Plaintiff's Motion to Quash which stated: "if this Court grants SMART's [Rule 37] motion as to Mr. Burns' testimony, there will be no reason for him to appear at trial. [ECF No. 88, PageID.2894]. Also, SMART filed a supplemental response which stated that, on January 4, 2024, Plaintiff's counsel sent Defense Counsel an email stating that Plaintiff now intended to call Burns as part of her case in chief. ECF No. 96, PageID.2948. Plaintiff appears to reverse her earlier position, which urged the Court to quash the subpoena sent to Burns because of undue burdens, *inter alia*. While the email provides an additional

### A. Plaintiff's Motion to Amend/Correct Proposed Joint Final Pretrial Order [ECF No. 81]

The parties submitted a Joint Final Pretrial Order on September 15, 2023. On December 26, 2023, Plaintiff sent Defendant a request to produce Richard Sauer at trial and Defendant objected to the request on December 28, 2023, noting that Sauer was not listed on the Joint Final Pretrial Order.

In her Motion to Amend, filed on December 29, 2024, Plaintiff seeks to amend the Joint Final Pretrial Order and add Richard Sauer as a witness. Sauer is a SMART employee and Plaintiff says that "he has relevant information regarding discrimination within SMART" and that "[g]ood cause exists to amend the proposed joint final pretrial order." ECF No. 81, PageID.2585.

This Court's Scheduling Order provides that "all witnesses must be listed in the Final Pretrial Order. Witnesses may only be added to the Final Pretrial Order by stipulation of the parties and leave of court." ECF No. 13, PageID.90. The Court's practice guidelines also provide that witnesses and exhibits not listed on the final pretrial order will not be admitted at trial without a showing of good cause. Further, E.D. Mich. L.R. 16.2(b)(8) provides in part that only witnesses listed on the Joint Final Pretrial Order "will be permitted to testify at trial, except for rebuttal witnesses

---

reason for mooting Plaintiff's Motion to Quash, it does not persuade the Court to change its ruling that Burns will not be permitted to testify at trial.

whose testimony could not be reasonably anticipated before trial, or except for good cause shown."

Plaintiff's Motion discusses the purported relevance of Sauer's testimony but fails to explain what "good cause" exists to amend the Joint Final Pretrial Order. Indeed, Plaintiff does not offer a reason why she waited until December 26, 2023 to seek production of a new trial witness and she does not explain why she waited until December 29, 2023 to seek an amendment of the Joint Final Pretrial Order. On both dates, however, Plaintiff knew that trial is scheduled to begin on January 10, 2023. The only statement Plaintiff makes pertaining to the delay is that Sauer was listed on the witness list filed in 2021 and "[w]hile preparing for trial, Plaintiff discovered that Mr. Sauer's testimony would be relevant." ECF No. 81, PageID.2585. In this case, trial has been adjourned many times over and as stated *supra*, the parties should have been ready for trial on November 7, 2023, well before the dates of Plaintiff's Motion to Amend and her request for production. Sauer should have been added to the JFPTO long ago. Accordingly, Plaintiff fails to establish that good cause or a substantial justification exists to amend the Joint Final Pretrial Order. See *Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 982 (6th Cir. 2017) (affirming exclusion of witnesses who were identified only a month before trial and after discovery had closed).

16

Plaintiff's Motion to Amend is **DENIED** and Defendant's Objection to the request for production is **SUSTAINED**. As the docket currently reflects, Trial will begin at 8:30 a.m. on January 10, 2023 and there will be no more adjournments.

## IV. Conclusion

For the reasons set forth above:

(5) Defendant's Motion for Sanctions [ECF No. 72] is granted in part and denied in part. It is **GRANTED** with respect to the request to strike Gerald Burns as a witness and to strike his trial deposition testimony; and it is **DENIED** with respect to the request to dismiss the case.

(6) Since Burns' testimony will not be admitted into evidence, Defendant's surveillance reports, which pertain solely to Burns' physical impairments, are irrelevant and Defendant's Motion to Amend the joint final pretrial order [ECF No. 77] is **DENIED**.

(7) Burns will not be permitted to testify at trial, therefore, Plaintiff's Motion to Quash the subpoena sent to him [ECF No. 80] is **MOOT.**

(8) Plaintiff Motion to Amend/Correct Proposed Joint Final Pretrial Order [ECF No. 81] is **DENIED;** Defendant's Objection as to Richard Sauer and the request for production [ECF No. 79] is **SUSTAINED**.

**SO ORDERED.**

Dated: January 8, 2024     /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 8, 2024, by electronic and/or ordinary mail.
s/ Lisa C. Bartlett
Case Manager