UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAYANN MILLER,

           Plaintiff(s),

                         Case No. 20-11122

vs.

                         HON. GERSHWIN A. DRAIN

SUBURBAN MOBILITY AUTHORITY
FOR REGIONAL TRANSPORTATION,

           Defendant(s).

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND OTHER COSTS [#114], GRANTING DEFENDANT'S MOTION FOR STAY AND WAIVER OF BOND REQUIREMENT [#116], DENYING MOTION FOR A NEW TRIAL [#117] AND DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW [#118]

## I.   INTRODUCTION

On January 18, 2024, the jury returned a verdict in the amount of $305, 280.40 on the Plaintiff's sole remaining claim: disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 and under Michigan's Elliot-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq*.  The Court entered judgment in favor of Plaintiff on January 26, 2024.

Presently before the Court are the parties' post-trial motions, including Plaintiff's Motion for Attorneys' Fees and Costs, Defendant's Motion for a Stay, Defendant's Motion for a New Trial and Defendant's Renewed Motion for Judgment as a Matter of Law.  These matters are fully briefed, and upon review of the parties' submissions, the Court concludes oral argument will not aid in the disposition of these matters. Accordingly, the parties' post-trial motions will be determined on the briefs.  *See* E.D.Mich.L.R. 7.1(f)(2).

## II.    LAW & ANALYSIS

### A.  Motion for an Award of Attorneys' Fees and Costs

### 1. Attorneys' Fees

Plaintiff seeks attorney's fees and costs in the amount of $428,466.66–$411,544.50 in attorneys' fees and $16,922.16 in costs. Defendant counters that given the mediocre result achieved in this action, Plaintiff should receive no fee award—or at a minimum, a substantially reduced award.

Pursuant to 42 U.S.C. § 2000e-5(k), "the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ." 42 U.S.C. § 2000e-5(k).

2

The Court can consider the following factors when determining the

reasonableness of the hours and rates:

> (1) The time and labor required; (2) the novelty and
> difficulty of the questions presented; (3) the skill needed
> to perform the legal service properly; (4) the preclusion of
> other employment by the attorney due to acceptance of
> the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) time and limitations imposed by
> the client or the circumstances; (8) the amount involved
> and the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the undesirability of the
> case; (11) the nature and length of the professional
> relationship with the client; and (12) awards in similar
> cases.

*Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (quotation

marks omitted). Similarly, Michigan's Elliot-Larsen Civil Rights Act

provides in part that the "(a) Court, in rendering judgment in an action

brought pursuant to this Article, may award all or a portion of the costs

of the litigation, including reasonable attorney fees and witness fees, to

the complainant in the action if the Court determines the award is

appropriate." MICH. COMP. LAWS § 37.2802. "'[T]he most critical factor'

in determining the reasonableness of a fee award 'is the degree of

success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

In order "[t]o justify any award of attorney's fees, the party

3

seeking compensation bears the burden of documenting its work."
*Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007).  If
awarding fees, the Court must "begin [] by determining 'the fee
applicant's lodestar, which is the proven number of hours reasonably
expended on the case by an attorney, multiplied by his court-
ascertained reasonable hourly rate.'" *Corbin v. Steak 'n Shake, Inc.*, 861
F. App'x 639, 649 (6th Cir. 2021) (quoting *Waldo v. Consumers Energy
Co.*, 726 F.3d 802 821 (6th Cir. 2013)). "The reasonable hourly rate
accords with the 'prevailing market rate in the relevant community.'"
*Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). A reasonable
number of hours does not include "excessive, redundant, or otherwise
unnecessary" hours. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424,
434 (1983)). Where the attorney has carried his "burden of showing that
the claimed rate and number of hours are reasonable, the resulting
product is presumed to be the reasonable fee to which counsel is
entitled."  *Pennsylvania v. Delaware Valley Citizens' Council for Clean
Air*, 478 U.S. 546, 564 (1986).

　　"If, . . . a plaintiff has achieved only partial or limited success, the
product of hours reasonably expended on the litigation as a whole times

a reasonably hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  *Hensley*, 461 U.S. at 436.  "There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making equitable judgment."  *Id*. at 436-37.

In this case, Plaintiff asserts that she "prevailed at every critical stage of these proceedings."  Contrary to Plaintiff's assertion, Plaintiff only achieved limited success in this case.  Plaintiff originally brought three claims for disparate treatment, disparate impact and retaliation under Title VII and Michigan's Elliot-Larsen Civil Rights Act.  Only one of her claims survived summary judgment and proceeded to trial— Plaintiff's claim for disparate treatment.  Moreover, the jury verdict was less than 5% of the total amount Plaintiff's counsel argued the jury should award during closing argument.  "Fee awards under § 1988 were never intended to produce windfalls to attorneys."  *Farrar*, 506 U.S. at 114-16.  Plaintiff's motion and supporting documents fail to

acknowledge that Plaintiff was unsuccessful on the majority of Plaintiff's claims.

Next, the Court finds that Plaintiff is seeking fees at an hourly rate exorbitantly higher than the prevailing market rate for attorneys with similar experience and similar practice area.  For example, Plaintiff requests an hourly rate of $1,500.00 per hour for the work of attorney James Rasor.  Plaintiff does not provide any analysis of how this high hourly rate is consistent with the prevailing market rates and asserts that "although his hourly billing rate is on the high end, it is not outside the range of local rates."  However, upon review of the Michigan Bar Association's Economics of Law Practice Survey (ELP), the Court notes that Mr. Rasor's requested billing rate is outside the range of local billing rates.  The 95th percentile average for employment attorneys is $650.00 per hour.

Plaintiff next claims that Amanda Washburn should be entitled to recover $450 per hour for her work. Again, Plaintiff fails to cite any prevailing market rates or any data from the ELP Survey or indeed any other source. Instead, Plaintiff simply notes that Washburn earned good grades in law school and has worked "as a law clerk for the undersigned

for many years." This is not enough to establish that $450 per hour is in any way reasonable.  Plaintiff seeks an hourly rate for Washburn for all her time on this matter, purportedly as an attorney at $450 per hour, yet fails to mention that per the Michigan State Bar website, Washburn was not admitted to the Michigan Bar until November 14, 2023. Per Washburn's time entries, 75.6 hours were spent before she was admitted to the Bar.  If it was instead paralegal time and paralegal tasks, Plaintiff is claiming a hopelessly inflated rate that must be substantially reduced.  For the period when Washburn was a licensed attorney working on this matter, the $450.00 rate is unreasonable considering Washburn's experience and a review of the ELP, where the mean billing rate for associates with 1-2 years of experience is $327.00.

Plaintiff next seeks to recover attorney fees for Michael Laurila at $300 per hour. However, Plaintiff readily concedes that Michael Laurila was not actually an attorney when working on this matter but was instead "a law school graduate awaiting bar results at the time he worked on this case." As such, Plaintiff cannot recover fees at a rate that exceeds the hourly rate of many practicing attorneys. A reasonable hourly rate for the work of law clerks would be $100 per hour. *See, e.g.,*

*Weaver v. Comm'r of Social Sec.*, 2021 WL 1269547 (W.D. Mich. 2021) ($100 per hour for law clerks reasonable).

Here, an award at the level requested by Plaintiff would result in a windfall, particularly in light of the limited success on Plaintiff's claims overall and the small award on Plaintiff's disparate treatment claim in comparison to what Plaintiff sought. Moreover, Plaintiff seeks to recover fees at an inflated billing rate. Mr. Rasor seeks a rate well beyond the 95th percentile for attorneys in the relevant legal community, and the other attorneys and legal staff have requested hourly rates that are also not supported by the ELP. Moreover, Plaintiff's requested fees for Shannon Sofer, Stephanie Moore, and Shelby DeFelice are unreasonable and represent duplicative work. Therefore, the Court will only award fees for Ms. Sofer's work.

The Court therefore determines that the following rates and hours are reasonable:

| Attorney | Hours | Billing Rate | Total |
|---|---|---|---|
| Jim Rasor | 172.74 | $600.00 | $103, 200.00 |
| Amanda Washburn (pre-law license) | 67 | $100.00 | $6,700.00 |

| Amanda Washburn (post-law license) | 108 | $250.00 | $27,066.00 |
|---|---|---|---|
| Andrew Laurila | 55.44 | $350.00 | $19,404.00 |
| Michael Laurila | 28 | $100.00 | $2,800.00 |
| Shannon Sofer | 93.35 | $100.00 | $9,335.00 |
| | | | $168,505.00 |

Accordingly, for the reasons articulated above, Plaintiff's request for attorney fees will be granted in part. Plaintiff is entitled to $168,505.00 in attorneys' fees.

## 2. Costs

Plaintiff seeks costs in the amount of $16,922.16. Rule 54(d)(1) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Federal Rule 54 "creates a presumption in favor of awarding costs" other than attorney's fees. *White & White, Inc. v. American Hospital Supply Corp.*, 786 F.2d 728 (6th Cir. 1986). This presumption is limited to those costs specified in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons,*

9

*Inc.,* 482 U.S. 437, 441 (1987).

Title 28 U.S.C. § 1920 states in relevant part that:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Additionally, the Eastern District of Michigan has a Bill of Costs Handbook to assist in determining which costs are properly taxable.

Upon the filing of a timely bill of cost, the opposing party has the burden of showing that the costs requested fall outside the scope of 28 U.S.C. § 1920 or are otherwise unreasonable. *LeBron v. Royal Caribbean Cruises, Ltd.*, No. 1:16-cv-24687-KMW, 2021 U.S. Dist. LEXIS 120449 (S.D. Fla. Jun. 28, 2021); *see also* 10 C. Wright, A. Miller, and M. Kane, *Federal Practice & Procedure*: *Civil* 3d § 2679 (1998).

Upon review of Plaintiff's requested costs, the Court finds

Plaintiff's expenses are recoverable.

As such, Plaintiff's Motion for Attorneys' Fees and Costs will be granted in part. Plaintiff is entitled to $168,505.00 in attorneys' fees and $16,922.16 in costs for a total attorneys' fees and costs award of $185,427.16.

### B. Defendant's Renewed Motion for Judgment as a Matter of Law

Defendant argues that Plaintiff failed to present legally sufficient evidence for the jury to find that she was subject to disparate treatment in violation of Title VII and the ELCRA. Conversely, Plaintiff argues she presented legally sufficient evidence for the jury to find in her favor.

Rule 50 of the Federal Rules of Civil Procedure governs motions for judgment as a matter of law. It provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may "resolve the issue against the party." Fed. R. Civ. P. 50.

In making such a determination, this Court must view the evidence in the light most favorable to the nonmovant, granting all reasonable inferences in her favor. *Garrison v. Cassens Transp. Co.*,

11

334 F.3d 528, 537 (6th Cir. 2003).  This Court should "not weigh the evidence, evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1152 (6th Cir. 1995).  "[T]he verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991).  A motion for judgment as a matter of law should be granted "only if reasonable minds could not come to a conclusion other than one favoring the movant." *Garrison*, 334 F.3d at 537-38.

Under Title VII/ELCRA, a Plaintiff's disparate treatment claim first requires her to prove a prima facie case of discrimination. A prima facie case of discrimination requires a plaintiff to show 1) she is a member of a protected class; 2) she was qualified for the job; 3) she suffered an adverse employment decision; and 4) circumstances that support an inference of discrimination. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008); *Swierkiewicz v Sorema N.A.*, 534 U.S. 506, 510 (2002).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). That is, the plaintiff merely must show circumstances that "give rise to an inference of unlawful discrimination." *Id*. In the failure-to-promote context, the second element requires a plaintiff to show "she applied for and was qualified for a promotion" and an inference of discrimination will be found when "an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000).

Defendant argues Plaintiff failed to establish she was qualified for the position of Road Supervisor. Contrary to Defendant's position, the jury heard that Plaintiff was selected for a first-round interview, as well as Leeya Sutter's testimony that any candidates chosen for an interview is deemed qualified. Likewise, Darren Beach, an interview panelist, testified that the panel assumes anyone sitting for a first-round interview is qualified. The jury also heard that Plaintiff had been a bus driver for years, as well as had significant prior supervisory experience.

13

The only basis that Defendant deemed Plaintiff "unqualified" arises from the subjective perspective of how Plaintiff interviewed. Ironically, Darren Beach, Amy May, and Leeya Sutter all testified that several of the answers given by the selected candidate, Vernon Williams, were extremely deficient, yet he was deemed qualified. For instance, while Defendant maintains Plaintiff's answers concerning accident response were deficient, Mr. Williams' response was, "You just need to do what you need to do." Based on the foregoing, the jury had a sufficient basis for concluding Plaintiff satisfied this aspect of her prima facie case.

Defendant next asserts that it had a non-discriminatory reason for not promoting Plaintiff. Defendant relies on various alleged disciplinable offenses, including 'cutting a run', or failing to complete her route, and at least twice urinating in a cup on the bus she was operating. However, these events occurred after Plaintiff's 2019 interview for the Road Supervisor position. Thus, these events have no bearing on the decision to promote Plaintiff. Indeed, the Interview Activity Record submitted into evidence did not contain any of these allegations. Moreover, Defendant's purported "non-discriminatory"

14

reasoning relies entirely on credibility determinations about Plaintiff's alleged interview performance. Additionally, the record showed that Vernon Williams had (1) much more discipline than Plaintiff, (2) much less experience with SMART than her, and (3) objectively deficient interview answers.  As such, the Court finds a legally sufficient evidentiary basis for the jury's rejection of Defendant's purported non-discriminatory reason for failing to promote Plaintiff.

Defendant also maintains Plaintiff failed to present evidence that SMART's non-discriminatory reason for failing to promote her was pretext for discrimination.  Pretext can be shown under this analysis in two ways: (1) where the plaintiff was a "plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former"; or (2) where the plaintiff was "as qualified, if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.'" *Bartlett v. Gates*, 421 Fed. Appx. 485, 490-91 (6th Cir. 2010) (quoting *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006)).

Additionally, "[p]retext may be established either by a direct showing that unlawful discrimination more than likely motivated the

employer or by an indirect showing that the employer's explanation is not credible." *Jenkins v. Nashville Pub. Radio*, 106 Fed. Appx. 991 (6th Cir. 2004)(citing *Kline v. TVA*, 128 F.3d 337, 342-3 (6th Cir. 1997)). When evaluating pretext, "the court should consider all evidence in the light most favorable to the plaintiff including evidence presented in the prima facie stage. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011).

The disciplinable offenses Defendant cites for support of Plaintiff's alleged lack of qualifications occurred after Plaintiff was denied a promotion. Thus, they could not possibly have any bearing on the decision to deny her a promotion.  Not only did Defendant select African American candidates for the jobs at issue, but every chosen Road Supervisor for the Oakland County Terminal since Carol Martin became Superintendent in 2013 has been African American. Additionally, Matthew Kauppila, a Caucasian male, testified that he was denied promotions or told not to apply under Carol Martin's leadership, but was able to be promoted after she retired.  The selected candidate, Vernon Williams, had egregious discipline, some of which Carol Martin intentionally hid from the interview panel. The discipline

included hitting the Q-line and failing to report it and falling asleep behind the wheel of the bus.  Plaintiff had significantly more experience as a bus driver for SMART and more past experience as a supervisor. The final avenue Plaintiff can show probative evidence of discrimination is the statements that Martin made regarding Plaintiff never getting a promotion on her watch.

Based on the foregoing, the jury had a legally sufficient basis to find in Plaintiff's favor on her prima facie case, and for rejecting Defendant's purported non-discriminatory reason for not promoting her as pretext for discrimination.  Defendant's Renewed Motion for Judgment as a matter of law is denied.

### C. Defendant's Motion for New Trial

Defendant argues it is entitled to a new trial for the following reasons:  (1)  Gerald Burns was permitted to testify at trial despite counsel's gamesmanship and discovery misconduct, (2)  counsel's statements during closing argument that SMART's promotion process was "terrible" and that SMART had ample resources to afford a better process and (3)  Plaintiff's use of a peremptory challenge on the sole African American juror violated *Batson v. Kentucky*, 476 U.S. 79 (1986).

17

Rule 59 provides that a new trial may be granted to all or any of the parties and on all or part of the issues for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. *See* Fed. R. Civ. P. 59.  The Sixth Circuit has "interpreted Rule 59 to mean that 'a new trial is warranted when a jury has reached a seriously erroneous result as evidenced by:  (1) the verdict being against the weight of the evidence; (2) damages being excessive; or (3)  the trial being unfair to the moving party in some fashion, i.e., the proceeding being influenced by prejudice or bias." *Mosby-Meachem v. Memphis Light, Gas, & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018) (citations omitted). When the basis for a new trial is purported discovery violations, the movant must show that it "was prejudiced and that failure to grant a new trial is inconsistent with substantial justice." *Erskine v. Consol. Rail Corp.*, 814 F.2d 266, 272 (6th Cir. 1987).  The party seeking a new trial bears "a heavy burden." *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1466 (6th Cir. 1993). As explained below, Defendant has not met its heavy burden here.

### 1. Gerald Burns

Defendant first argues a new trial is warranted because the Court

granted Plaintiff's Motion for Reconsideration and allowed Gerald

Burns to testify. As background, Burns was first deposed on May 7,

2021, and testified that he did not have any opinion as to whether Carol

Martin was a racist and had never heard Martin say anything that

made him feel as though she was prejudiced toward white employees.

Thereafter, in April of 2023, Plaintiff's counsel learned that Burns

intended to contradict his prior testimony and would claim that Martin

told him that she "would never hire a white person under [her] watch."

Rather, than supplement his discovery responses, Plaintiff's counsel sat

on the information for five months. In September of 2023, Plaintiff's

counsel noticed an emergency *de bene esse* deposition giving Defendant

only three days to prepare. Though the deposition was noticed via

Zoom, Burns appeared live in Plaintiff's counsel's office.

Defendant moved to strike Burns as a witness or for dismissal

based on Plaintiff's discovery violation. The Court denied the motion

without prejudice but granted Defendant's request for an adjournment

and authorized taking Burns' deposition again, "for the limited purpose

of determining the full scope of the reasons for Burn's change in

testimony." Defendant again moved to strike Burns as a witness and

for dismissal.  The Court struck Burns as a witness concluding that Plaintiff's failure to supplement her disclosure of Burns' anticipated testimony was not substantially justified.  Plaintiff's counsel then filed a Motion for Reconsideration, which the Court granted and allowed Burns to testify.  Thus, Defendant complains there was no sanction ultimately imposed despite Plaintiff's counsel's gamesmanship.

Here, even if it was error when the Court failed to impose any sanctions against counsel, Defendant still must show that allowing Burns to testify prejudiced it and that failure to grant a new trial will be inconsistent with substantial justice.  *Erskine*, 814 F.2d at 272. Defendant had a full opportunity to cross examine Burns at trial about his contradictory testimony and explore his credibility.  The jury was therefore fully on notice about Burns' changed testimony between the first and second deposition. Moreover, the Court allowed Defendant an opportunity to re-depose Burns and adjourned the trial to give Defendant time to conduct Burns' third deposition.  Based on these facts, the Court cannot conclude Defendant was prejudiced by the Court allowing Burns to testify.  A new trial is therefore unwarranted.

## 2. Statements During Closing Argument

Next, Defendant complains that counsel was permitted to argue to the jury during closing that SMART's promotion process is "terrible," which confused the jury because this argument addresses Plaintiff's disparate impact claim, which had already been dismissed by the Court. Defendant also argues that counsel should not have been allowed to argue that SMART is a big company with significant financial resources enabling it to provide a better promotion process.

"Defendants must meet a high standard to obtain a new trial on the grounds of improper statements by opposing counsel." *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 589 (6th Cir. 2015) (citing *Balsley v. LFP, Inc.*, 691 F.3d 747, 761–62 (6th Cir.2012)).  In considering whether allegedly improper attorney statements merit a new trial, courts analyze the totality of the circumstances, "including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g., whether it is a close case), and the verdict itself." *Balsley*, 691 F.3d at 761.

The totality of the circumstances does not demonstrate that Defendant is entitled to a new trial based on the isolated comments of

Plaintiff's counsel during closing argument. The Sixth Circuit has found that comments made only during closing arguments can be isolated, and thus not grounds for a new trial. See, e.g., *Stewart v. Trierweiler*, 867 F.3d 633, 641 (6th Cir. 2017) (finding that remarks made only during closing argument after a four-day trial constituted "isolated comments"); *United States v. Farah*, 766 F.3d 599, 615–16 (6th Cir. 2014) (concluding that "[t]he prosecutor's statements were isolated, occurring only twice during the entirety of his closing argument").

Additionally, the jury was instructed twice that the lawyers' statements, commentaries, and arguments are not evidence. Juries are presumed to follow the Court's instructions. *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009). Moreover, it was not error for Plaintiff to point out the lack of an objective process in making the promotion decision herein, as it is evidence of pretext. *Bell v. Prefix, Inc.*, 321 Fed.Appx. 423, 431 (6th Cir. 2009)(The lack of an objective process in making employment decisions is evidence of pretext because the "discretionary nature provided an opportunity for" animus to permeate the employment decisions). Here, a major aspect of Defendant's defense was its interview process. For all of these reasons,

Defendant is not entitled to a new trial based on counsel's remarks during closing argument.

### 3. *Batson v. Kentucky*

Finally, Defendant maintains that Plaintiff's exercise of a peremptory challenge as to the sole African American juror out of the fourteen originally impaneled violated *Batson v. Kentucky*. Defendant objected to counsel's peremptory challenge under *Batson* and argued counsel's rationale was not valid for striking the juror. Plaintiff argues it had a race-neutral reason to excuse the juror and there was no *Batson* violation.

In *Batson v. Kentucky*, the Supreme Court created a three-step framework to determine whether a juror has been struck for a discriminatory purpose. 476 U.S. 79, 86–89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). First, the opponent of the strike "must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' " *Johnson v. California*, 545 U.S. 162, 168, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) (quoting *Batson*, 476 U.S. at 93–94, 106 S.Ct. 1712). Second, once an opponent has made out a prima facie case, "the 'burden shifts to the [striking party] to

explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." *Id.* (quoting *Batson*, 476 U.S. at 94, 106 S.Ct. 1712.) "Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide ... whether the opponent of the strike has proved purposeful racial discrimination.' " *Id.* (quoting *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam)). "Throughout the *Batson* inquiry, the ultimate burden of persuasion always rests with the party challenging the strike ...." *United States v. Whiteside*, 747 F. App'x 387, 395 (6th Cir. 2018) (citing *McCurdy v. Montgomery County*, 240 F.3d at 521).

"[I]n considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted." *Snyder v. Louisiana*, 552 U.S. at 478, 128 S.Ct. 1203 (citing *Miller-El v. Dretke*, 545 U.S. 231, 239, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)).  There are multiple ways a party challenging a preemptory strike can show the other party was likely motivated in substantial part by a discriminatory intent. The party challenging the strike may point to a pattern of strikes used to target a specific racial group. See, e.g., *Flowers v. Mississippi*, 139 S. Ct.

at 2246; *Miller-El*, 545 U.S. at 241, 125 S.Ct. 2317; *Batson*, 476 U.S. at 97, 106 S.Ct. 1712. Additionally, a party may perform a comparative analysis of jurors struck to those similarly situated. See, e.g., *Snyder*, 552 U.S. at 479–84, 128 S.Ct. 1203; *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769. Disparate questioning or contrasting questioning of jurors may also support a conclusion that the nondiscriminatory explanation provided was pretextual. *See, e.g.*, *Miller-El*, 545 U.S. at 255–58, 125 S.Ct. 2317.

Here, the Jurors were all asked the same series of questions. Each juror was asked, "do you believe that minorities can be prejudiced against non-minorities?" The juror at issue here responded by taking a long pause, sighing, and answering, "yes . . . in some ways." Moreover, this juror expressed that sitting for the trial would be a financial hardship because she would not be paid for her job for the time she was at trial. Additionally, it is denoted that Plaintiff's counsel struck another juror who testified that she would likewise experience financial hardship. Based on the above, Defendant has failed in its burden to show counsel's peremptory strike of the sole African American juror was likely motivated in substantial part by a discriminatory intent. A new

trial is not warranted because *Batson* was not violated.

### D.  Defendant's Motion for Stay of Proceedings to Enforce Judgment, Waiver of Bond Requirement, or to Set Filing Date for a Motion to Approve a Supersedeas Bond

Defendant asks this Court to extend the automatic 30-day stay provided by Fed. R. Civ. P. 62(a) until this Court resolves the parties' pending post-trial motions.   Defendant also seeks to pursue an appeal by right to the Court of Appeals.  Thus, Defendant asks that the Court continue a stay of the enforcement of the judgment pursuant to Fed. R. Civ. P. 62(b) and to waive the requirement of posting a supersedeas bond.

A party who files a satisfactory supersedeas bond is entitled to a stay of the money judgment as a matter of right.  *See Arban v. W. Pub. Corp.*, 345 F.3d 390, 405 (6th Cir. 2003).  But under "appropriate circumstances, courts may exercise their discretion to dispense with the bond requirement when granting a stay of a monetary judgment." *Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n*, No. 17-11130, 2021 WL 1526277, at *2 (E.D. Mich. Apr. 19, 2021).  One such circumstance is when  a party can provide evidence that its "ability to pay the judgment is so obvious that posting a bond would simply be a waste of

money . . . . *Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 353 (E.D. Mich. 1988). "When an appellant claims its ability to pay the judgment is so obvious that posting a bond would simply be a waste of money, courts have generally required the appellant to present 'a financially secure plan for maintaining the same degree of solvency during the period of an appeal.'" *Hamlin*, 181 F.R.D. at 353 (citation omitted).

Here, Defendant is a governmental entity whose finances are a matter of public record and are independently audited by Plante Moran (Ex 1, June 2023 SMART Financial Report). As of June 30, 2023, Defendant had over $376 million in total assets, and its "unrestricted net position," which is the portion of its "net position that can be used to finance day-to-day operations," was $72,502,703 as of June 30, 2023 (Ex 1, June 2023 SMART Financial Report, pp 5, 8). Defendant committed to a balanced budget in 2023 and is anticipating an additional $95 million in new funds per year beginning in fiscal year 2023 based on a millage approved by voters in Macomb, Oakland, and Wayne Counties (Ex 1, June 2023 SMART Financial Report, p 6).

In contrast, the January 26, 2024 judgment of $305,280.40, represents around 0.42% of SMART's unrestricted net position as of

June 30, 2023 (Ex 1, June 2023 SMART Financial Report, p 8).
Given Defendant's revenues as well as its unrestricted net position,
which is available to satisfy the judgment, Defendant will be able to
easily pay the judgment and thus providing a supersedeas bond would
be a waste of money.   Defendant has also shown it can maintain the
same degree of solvency throughout the pendency of any appeal process.
Therefore, the Court will waive the bond required under Rule 62(b) and
stay execution of the judgment pending the resolution of Defendant's
appeal to the Sixth Circuit Court of Appeals.

## III.   CONCLUSION

Plaintiff's Motion for an Award of Attorneys' Fees and Costs
[#114] is GRANTED IN PART. The Court awards attorney's fees in the
amount of $168,505.00, and costs in the amount of $16,922.16 for a total
award of $185,427.16.

Defendant's Renewed Motion for Judgment as a Matter of Law, or
in the Alternative, for New Trial [#118] is DENIED.

Defendant's Motion for a New Trial [#117] is DENIED.

Defendant's Motion for Stay of Proceedings to Enforce Judgment
and for Waiver of Bond Requirement [#116] is GRANTED.

SO ORDERED.

Dated:  May 9, 2024                    /s/Gershwin A. Drain
                                       GERSHWIN A. DRAIN
                                       United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 9, 2024, by electronic and/or ordinary mail.
                    /s/ Teresa McGovern
                      Case Manager